Robert E. FITZGERALD, Appellant,

v.

MINNESOTA CHIROPRACTIC ASSOCI-
ATION, INC., Respondent,

Clark C. Nichols, et al., Defendants.

Nos. 48959, 49114.

Supreme Court of Minnesota.

April 4, 1980.

Rehearing Denied July 17, 1980.

Larkin, Hoffman, Daly & Lindgren and Joseph W. Anthony, Minneapolis, for appellant.

Hall & Sausen and Clinton J. Hall, Forest Lake, Gislason & Martin and James T. Martin, Edina, for respondent.

KELLY, Justice.

In this libel action the trial court granted defendant's motion for dismissal at the close of plaintiff's evidence, holding that he had not presented sufficient evidence of actual malice to submit the issue to the jury. We agree with that analysis and accordingly affirm.

Plaintiff, a widely known amateur speed skater and winner of many awards including an Olympic medal in 1948, graduated from chiropractic college in 1950 and was then licensed as a chiropractor in Minnesota. In 1952 or 1953 he joined the International Chiropractic Association (ICA) and in 1953 or 1954 he joined the Minnesota Chiropractic Association (MCA). His advertising practices were disapproved by MCA members and led to friction with MCA and to citations from the State Board of Chiropractic Examiners (composed of MCA members). He was expelled from the MCA in 1959.

After this time he became more active in ICA and by the early 1960's began to lobby at the legislature to promote bills reflecting the ICA view that the scope of chiropractic should be only physical manipulation of the spine and to oppose MCA-proposed legislation which would expand the scope of chiropractic to include other healing arts like physical therapy and podiatry. In 1973 plaintiff as a lobbyist for ICA opposed this "scope" legislation and also an MCA-proposed measure giving the Board of Chiropractic Examiners greater power to discipline the profession. The articles which resulted in this suit were written by Dale Swanson, a lobbyist for MCA, with the admitted intention of diminishing the respect accorded plaintiff's views as being "in some sense more proper than those of the members of the MCA" and his "appearance of credibility." They were published in the MCA's monthly newsletter for November 1973 under the titles, "LEISURELY LITIGATION," "DISCIPLINE OR PERSECUTION," " 'SCOPE' the Scapegoat," and "TIGER BOB." They tied plaintiff's lobbying efforts to those of the medical profession, reported on a complaint to the Board of Chiropractic Examiners that plaintiff was promising cures to the public through newspaper advertising,[1] reported that in 1954 plaintiff assaulted a skating official and was suspended for life from participating in activities of the Eastern Minnesota Skating Association, reported that he had been expelled from MCA in 1954, and commented that plaintiff's lobbying efforts were a "protest and contest" over his expulsion from MCA and a "personal vendetta against authority."

■ Discussion of the evidence he presented to show the falsity of the articles is unnecessary, however, because the parties agree that plaintiff is a public figure, a fact which gives constitutional protection to MCA for defamatory publications concerning him in the absence of proof of actual malice on its part. See *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), which extended such protection, first accorded for defamatory publications about public officials in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), to such publications about public figures.

These decisions defined actual malice to be either actual knowledge of the falsity of the publication or reckless disregard of whether it is false or not. They also required that actual malice be proved by clear and convincing evidence. *Curtis Pub. Co. v. Butts*, 388 U.S. at 155, 160–1, 164, 87 S.Ct. at 1991, 1994–1995, 1996; *New York Times Co. v. Sullivan*, 376 U.S. at 280, 286, 84 S.Ct. at 726, 729. In *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), quoted by this court in *Hirman v. Rogers*, 257 N.W.2d 563, 566 (1977), the Supreme Court added that reckless disregard is not measured by what a reasonably prudent man would have published, or investigated before publishing, but instead there must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." In *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court restated its view that proof of failure to investigate, without more, cannot establish reckless disregard for the truth and that instead the publisher must be shown to have acted with a high degree of awareness of the probable falsity of the information before actual malice is proved.[2]

---

1. Minn.Stat. 148.10, subd. 1 (1978) provides in part: "The state board of chiropractic examiners may refuse to grant, or may revoke, suspend, condition, limit, restrict or qualify a license to practice chiropractic, or may cause the name of a person licensed to be removed from the records in the office of the clerk of the district court for:

   "(1) The publishing or distributing, or causing to be published or distributed, in newspapers, magazines, directories, pamphlets, posters, cards, or in any other manner by advertisement, wherein the term 'cure' or 'guarantee to cure' or similar terms are used; which is hereby declared to be fraudulent and misleading to the general public; * * *."

2. See *Standke v. B. E. Darby & Sons, Inc.*, 291 Minn. 468, 193 N.W.2d 139 (1971); *cert. denied.* 406 U.S. 902, 92 S.Ct. 1608, 31 L.Ed.2d 813 (1972).

Applying these principles to the evidence here requires the conclusion that, as in *Hirman v. Rogers*, supra, plaintiff did not make a prima facie showing of actual malice. There is no evidence that defendant or the author of the articles had actual knowledge that any information in them was false. Similarly, no evidence permits an inference that defendant or the author entertained serious doubts as to the truth of the information published or acted with a high degree of awareness of its probable falsity. In fact, the author testified that he considered his sources reliable and that, when he did not, he sought verification from another source. His motives of diminishing plaintiff's credibility and the respect he received from legislators do not prove actual malice. *See Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967).

We conclude that the dismissal of plaintiff's action was proper.

Affirmed.