**Roger HINRICHS, Appellant,**

v.

**FARMERS COOPERATIVE GRAIN & SEED ASSOCIATION, Elevator # 2738, Thief River Falls, Minnesota, Respondent.**

**No. C1-82-1176.**

Supreme Court of Minnesota.

May 13, 1983.

Geller & Meagher, Daniel L. Geller and Kerry Meagher, Red Lake Falls, for appellant.

Neil McEwen and Richard N. Sather, Thief River Falls, for respondent.

YETKA, Justice.

This is an appeal by plaintiff Roger Hinrichs from an order of the Red Lake County District Court granting the motion of defendant Farmers Cooperative Grain & Seed Association, Elevator # 2738, Thief River Falls, Minnesota (Coop) for summary judgment and from the judgment entered pursuant thereto. Hinrichs had alleged that pig feed sold to him by Coop was defective. He claimed damages resulting from the death and weight loss of his stock. Coop denied the allegations, filed its own counterclaim, and moved for summary judgment. The trial court granted the motion for summary judgment, concluding that there was no issue of material fact. We reverse.

Roger Hinrichs is an experienced pork producer who has received many awards for quality pork-raising. His version of the facts, as stated in his answers to interrogatories, is as follows: On January 20, 1982, he ordered feed from Coop. The following day, the gestation sows first received the Coop feed. They rushed to the feed but, for the first time in Hinrichs' experience, did not finish what had been put out. By January 23, there was so much untouched feed that Hinrichs did not feed the gestation sows. He noticed that the sows had loose stools, that they appeared weak, and that one sow had aborted. From January 24 to 31, the sows recommenced eating, but ate only about ⅓ of their normal amount. The other pigs on the farm were eating normally.

On February 5, Hinrichs ordered more feed from Coop. This feed was placed in three bins, one each for the gestation sows, the lactation sows, and the finishing pigs. Hinrichs noticed that the lactation sows began eating the feed from Coop's earlier delivery. On February 8, Hinrichs observed that the lactation sows were not eating normally and that they had loose stools. Baby pigs were dying at a rate higher than ever before. On February 10, the pigs in the finishing barn exhibited identical symptoms. The only group of pigs not affected were the feeder pigs. These pigs were housed in the same barn with sick pigs, but were the only group that did not receive the Coop's feed.

On February 12, Hinrichs recognized a correlation between the feed deliveries and the pigs' illness. He telephoned both his veterinarian, Dr. E.C. Stelter, and Coop. On February 13, Dr. Stelter and two representatives of Coop examined the pigs. Dr. Stelter has since died and the record contains conflicting evidence on what his opinion regarding the pigs' condition was. According to Hinrichs, Dr. Stelter found no evidence of disease and concluded that the feed was the source of the problem. According to Mark Harris and Tom Scheef, Coop employees, Dr. Stelter stated that the death of piglets was not caused by feed, but appeared to be the result of an internal parasite infestation. Dr. Stelter sent a sample of the feed and two live piglets to

the Veterinary Service Department at North Dakota State University for analysis.

On February 13, Hinrichs bought feed pellets from another supplier and began feeding them to the lactation sows. He noted improvement within two days and began feeding the new pellets to the finishing pigs, who also improved. The remainder of the Coop feed was fed to the gestation sows. All sows bred in January lost their litters.

The laboratory reports on the specimens sent to North Dakota indicate that the feed was tested for various toxic and unpalatable substances, none of which was present. The piglets' tissues contained TGE (transmissal gastroenteritis) virus, which causes a highly communicable disease in pork. Having obtained these reports during discovery, Coop deposed their author, veterinary pathologist Dr. Ivan Berg. Dr. Berg stated that the piglets sent to him could be reasonably diagnosed as having chronic enteritis and chronic pneumonia. In his view, assuming those pigs were representative of the herd, neither the pneumonia nor an intestinal bacteria present was a primary factor causing the illness. He expressed the opinion that TGE virus was "a factor," but he could not say "how much of a factor" because this was "not a typical case." Dr. Berg stated that the tests done on the feed did not check for every possible toxin. He emphasized that this would be too expensive and time consuming to be practicable. In addition, he stated that the area of feed testing is continually developing with more tests being added all the time. He also stated that he did not know whether the feed sample tested was representative. When asked if he could make a "firm statement" as to whether the feed or a disease caused the problems in Hinrichs' herd, he responded that he could not. He subsequently stated, "I don't feel that in this case we had an ironclad all encompassing diagnosis."

Following Dr. Berg's deposition, Coop moved for summary judgment on the ground that the only facts in the record establish that Hinrichs' herd suffered from disease and not from defective feed. The trial court granted the motion on the basis of Dr. Berg's deposition. The trial court's memorandum states, "According to Dr. Berg, the reason Plaintiff's pigs stopped eating was because of the viral infection." The trial court also granted judgment against Hinrichs for the price of the feed.

The issue before us on appeal is whether the trial court erred in granting Coop's summary judgment motion.

■ In considering a motion for summary judgment, the inquiry is whether there is any genuine issue of material fact, not how any such issue should be resolved. Here, a factual finding that Coop's feed caused harm to Hinrichs' pigs is essential to recovery. Obviously, the question of causation is a material one. The more serious question on this record is whether the issue is genuine. Hinrichs' answers to interrogatories contain generally admissible information recounting his version of the events giving rise to the lawsuit. While his evidence is not based on expertise in the area of animal disease, it does give rise to an inference understandable to a lay person that there was a causal link between the feed and the health problems experienced by the herd.

The trial court had before it not only Hinrichs' answers to interrogatories, but also the testimony of Dr. Berg. The court characterized this testimony too favorably to Coop in stating that the doctor's opinion was that the pigs ceased eating because of a viral infection. True, Dr. Berg found nothing wrong with the feed. He was careful to emphasize, however, that the sample may not have been scientifically gathered and that the list of substances tested for was not exhaustive. Also, Dr. Berg was not entirely satisfied with the diagnosis of TGE since the symptoms in both the piglets sampled and the herd as a whole were to some extent atypical. Dr. Berg expressly stated that he could not make a "firm statement" as to whether feed or disease was the source of the trouble.

■ This is a close case, but while Dr. Stelter's death, the unavailability of an ad-

ditional feed sample, and the return to health of the herd make it unlikely that the evidence presented at a trial would be completely satisfying, it is by no means clear that a trial would be futile. The permissible inferences from Mr. Hinrichs' answers, combined with the equivocal nature of Dr. Berg's testimony, indicate a genuine issue of material fact.

The order for summary judgment in favor of respondent Coop and the judgment pursuant thereto are reversed.