Charles LOUWAGIE, Appellant,

v.

WITCO CHEMICAL CORPORATION, Empro Corporation, Respondents.

No. C5–85–1194.

Court of Appeals of Minnesota.

Nov. 26, 1985.

Cooper S. Ashley, Minneapolis, for appellant.

Paul E. Stoneberg, Marshall, for respondent Witco Chemical Corp.

Steven J. Muth, Minneapolis, for respondent Empro Corp.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Charles Louwagie (Louwagie) sued respondents Witco Chemical Corporation (Witco) and Empro Corporation (Empro) for negligence and strict liability in the manufacture and distribution of urethane insulation. The trial court granted respondents' motions for summary judgment, holding that Louwagie failed to present direct evidence establishing that Witco and Empro did in fact manufacture and supply the allegedly defective insulation and that Louwagie's circumstantial evidence was speculative and conjectural. Louwagie contends on appeal that the trial court erred in applying the directed verdict standard to the summary judgment motion and that the summary judgment was inappropriate because the question of the identity of the manufacturer and distributor poses a genuine issue of material fact.

## FACTS

The Morgan Insulation Company (Morgan) installed urethane foam insulation in Louwagie's workshed in 1976. A "thermal barrier" made of a plaster-like substance called Zonolite was added to cover the insulation from the floor up the wall for seven feet. In 1981, a spark from a welding torch operated by Louwagie's son started a fire in the shed, causing personal injury to Louwagie as well as damage to the shed and its contents. Louwagie claims that the spark ignited the insulation through a hole in the Zonolite, causing the entire building to be consumed by fire within minutes. Louwagie sued Witco and Empro, alleging that Witco manufactured and Empro distributed the insulation installed in his shed by Morgan. Louwagie did not then, and does not now, have any personal knowledge as to the identity of the manufacturer and supplier of the insulation that was in the shed. He relies primarily upon a statement made by Sheldon Sandman, part-owner of and sales representative for Morgan, who told a paralegal working for Louwagie's attorney that Witco and Empro manufactured and supplied the insulation. In his deposition testimony, Sandman confirmed that he made this statement, although at the time he did not know that he was speaking with the attorney's employee.

In 1976, Morgan purchased insulation from at least three different suppliers. In support of its motion for summary judgment, Empro submitted an affidavit from Sandman, in which he contradicts his earlier statement regarding the identity of the supplier and manufacturer of the insulation installed in the Louwagie shed. The affidavit asserts that Sandman is not certain which of Morgan's suppliers provided the insulation. Rather, Sandman states that

once the barrels of insulation are in Morgan's warehouse, the barrels from the various suppliers are not segregated and there is no way to distinguish between them when the barrels are selected for use.

Witco acknowledges that it manufactures the type of insulation installed in Louwagie's shed and that Empro is its sole distributor in the area. So, if Witco is shown to be the manufacturer of the insulation, Empro will be identified as the supplier. In 1976, however, Morgan purchased insulation manufactured by three companies: Witco, Mobay, and Upjohn. No evidence was presented as to the likelihood that the insulation installed for Louwagie was made by Mobay. There was evidence from Sandman that Upjohn's insulation is identifiable as long as it is still in the barrels, but that after it is installed it is impossible to distinguish it from another manufacturer's product. Just as he did in regard to Empro, regarding distribution of the material, Sandman stated in his deposition that he told a telephone caller (the paralegal from Louwagie's attorney's office) that the product used in the Louwagie shed was manufactured by Witco and then later stated in his affidavit that he had no way of knowing which firm made the insulation used in the Louwagie shed.

In addition to Sandman's affidavit, Witco and Empro rely on Sandman's explanation in his deposition of the reasons for his answer to the telephone inquiries. In his deposition, Sandman stated that he originally named Witco and Empro because to the best of his recollection "that's what was in there [the shed]," because they were the first manufacturer and supplier he had dealt with in his business, and because he had received his education on the flammability of the insulation through their seminars. He also stated that he received more than one telephone inquiry about the same issue and admitted that he never told a caller that the insulation was provided by someone other than Witco and Empro.

Louwagie protests that the inconsistencies between Sandman's telephone statements, his deposition testimony, and his affidavit show that the material fact of the manufacturer's and supplier's identities are genuinely at issue, such that summary judgment was inappropriate. In addition, pertinent to identifying Witco as the manufacturer, Sandman stated that Morgan always applies only one manufacturer's product for both of the two insulation components of an insulation job. This indicates that Morgan was at least able to distinguish between manufacturers' products, if not between the various suppliers' barrels in the warehouse. Louwagie adds that since Empro is Witco's sole distributor in the area, evidence that Witco manufactured the insulation installed in the shed will also show that Empro supplied the Witco insulation to Morgan. Finally, Louwagie also relies on the fact that the only copy of the sales proposal between Morgan and Louwagie that has been discovered in this litigation was produced by Empro.

One other piece of available evidence in the case is a sample of the insulation from Louwagie's shed. In its response to Louwagie's requests for admissions, Witco refused to test the sample, stating that it would cause undue hardship and expense. Witco further stated that, even if it did test the sample, the test results might only permit it to deny that the insulation was their product, if the chemical formula proved distinct from Witco's formula. But if the formula was the same as Witco's, the test would not conclusively show that the insulation was Witco's, since other companies may have utilized the same chemical formula in their production of insulation.

In granting the summary judgment motions, the trial court first stated that the applicable standard is the one that is applied in determining whether a party is entitled to a directed verdict after a plaintiff has rested. The court then found that Louwagie failed to present any direct evidence to establish that respondents furnished the insulation installed in Louwagie's shed. It further held that the available circumstantial evidence sustains with equal justification two or more inconsistent inferences and that neither inference pre-

ponderates over the other. The trial court held that in such a case there is no valid issue for a jury, because a jury's verdict would be based solely upon speculation and conjecture. The court also held that Sandman's initial statement naming Witco and Empro as the manufacturer and supplier constitutes hearsay and that it therefore could not be considered in making the summary judgment determination.

## ISSUES

1. Do genuine issues of material fact exist, precluding the rendering of summary judgment?

2. Did the trial court err in applying a directed verdict standard to a motion for summary judgment?

## ANALYSIS

1. Do genuine issues of material fact exist precluding the rendering of summary judgment?

Rule 56.03 of the Minnesota Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03.

All parties and the trial court agree that a dispute exists over the material fact of the identities of the manufacturer and supplier of the insulation in Louwagie's shed; the question is whether appellant has identified evidence so that his claim on that issue is genuinely presented here.

In evaluating the trial court's decision, we first examine the appropriate standard of review. We must employ the Minnesota Supreme Court's description of the appellate court's duty, which states as follows:

> A motion for summary judgment may be granted pursuant to Rule 56.03 only if, after taking the view of the evidence most favorable to the nonmoving party,

the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that he is entitled to judgment as a matter of law. It is essential to bear in mind that the moving party has the burden of proof and that the nonmoving party has the benefit of that view of the evidence which is most favorable to him. The salutary purpose and useful function of summary judgment proceedings as a means of securing the just, speedy, and inexpensive determination of the action (Rule 1) is well recognized, but resort to summary judgment was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. In other words a summary judgment is proper where there is no issue to be tried but is wholly erroneous where there is a genuine issue to try.

> The controlling words *genuine issue* and *material fact* need no amplification since they best speak for themselves. Their application in determining whether there is an absence of a *genuine issue* as to a *material fact* requires a careful scrutiny of the pleadings, depositions, admissions, and affidavits, if any, on file. Since, however, all factual inferences must be drawn against the movant for summary judgment, it follows that, even where the movant's supporting documents are uncontradicted, they may in themselves be insufficient to sustain his burden of proof.

*Sauter v. Sauter*, 244 Minn. 482, 484–85, 70 N.W.2d 351, 353 (1955) (emphasis in original) (footnotes omitted).

Given this test, we conclude the trial court erred in granting summary judgment to respondents Witco and Empro. When viewing the evidence in the light most favorable to Louwagie, inferences result that raise genuine issues of material fact such that it is not clearly established that respondents must succeed as a matter of law.

First, it is undisputed that Witco and Empro manufactured and supplied insulation to Morgan during the year when the

insulation was installed in Louwagie's shed. Moreover, Morgan received the bulk of its education and information about insulation from Witco-Empro agents and made its original purchases of insulation from them. Second, there is evidence that insulation manufactured by Witco was visually distinguishable from that manufactured by the two other firms, Upjohn and Mobay. Even more importantly, Witco's insulation may be chemically distinct. A sample of the insulation from Louwagie's shed is available for analysis. Third, Empro produced from its records the only copy of the sales proposal between Louwagie and Morgan that has been discovered in this litigation, and Empro has not offered evidence explaining the role that document played in Empro's transactions with Morgan.

Sandman's inconsistent statements show with even more clarity that the issue is genuinely presented. Sandman confirms that he originally stated that Witco and Empro produced and supplied the insulation in Louwagie's shed, but he now claims that there is no way to know if any chemicals supplied by Empro were so used, because the chemicals from all of Morgan's suppliers are intermingled in the Morgan warehouse. Sandman's more recent statements do not comport with his earlier statements and with other evidence that indicate that Morgan could distinguish between the different manufacturers' chemicals. In fact, it appears that it was necessary for Morgan to distinguish between them, because the type of insulation used involves two distinct components, and Sandman stated that Morgan never mixes the components of two manufacturers when installing insulation for a customer. Because Empro was Witco's sole supplier, this evidence bears on the identity of both the manufacturer and supplier; even if Sandman is correct in stating that the barrels from the different suppliers are not identifiable, an identification of Witco as the manufacturer leads to the inevitable conclusion that Empro was the supplier.

Witco and Empro have the burden of showing both that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Their burden is increased because we view the evidence in the light most favorable to Louwagie. As stated in *Sauter*, this means that even if respondents' supporting documents were uncontradicted, they may themselves be insufficient to sustain respondents' burden of proof. *Id.* Here, Witco's and Empro's only supporting affidavit is contradicted by admissions in a deposition and by Louwagie's circumstantial evidence. In addition, it appears that direct evidence, the insulation sample, is available but that Witco refused Louwagie's request for analysis of the sample. It may be that an analysis will conclusively show that Witco is not the manufacturer, and summary judgment in Witco's favor would be appropriate if that is the case. At this time, however, we do not have before us a sufficient showing that Witco and Empro are not the proper defendants here. The question is not whether Louwagie has shown Witco and Empro to be the manufacturer and supplier of the insulation in his shed, but whether he has presented sufficient evidence to create a genuine issue as to that fact.

In making its ruling, the trial court disregarded Sandman's original statements made to Louwagie's attorney's employee and naming Witco and Empro as the manufacturer and supplier. The trial court correctly classified the statements as hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Minn.R.Evid. 801(c).

It is not necessary to rely on Sandman's original statement for the truth of the matter asserted in order to conclude that a genuine issue of material fact exists. His deposition testimony acknowledging that he made the statement and his additional comments regarding the statement are not hearsay. When viewed in the light most favorable to Louwagie, the ambiguous statements in Sandman's deposition, along with the other available evidence, are sufficient to create a genuine issue of material

fact and to prevent respondents from obtaining judgment as a matter of law.

2. Did the trial court err in applying a directed verdict standard to a motion for summary judgment?

Appellant also contends that the trial court reached the conclusion it did because it erroneously confused the summary judgment standard with the standard applied in cases that weigh factual inferences for purposes of a directed verdict motion. It is true that a court may not examine the quantum of evidence when deciding a summary judgment motion. It is also true that the Minnesota Supreme Court has held that "[a] genuine issue must be established by 'substantial evidence'" and that although the standard is not defined, "it has been applied to require evidence sufficient to avoid a directed verdict at trial." *Murphy v. Country House, Inc.*, 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976) citing *Taylor v. Rederi A/S Volo*, 249 F.Supp. 326, 328 (E.D.Pa.1966) (*rev'd on other grounds*, 374 F.2d 545 (3d Cir.1967)).

The trial court here relied on the standard that where

the entire evidence sustains, with equal justification, two or more inconsistent inferences so that one inference does not reasonably preponderate over the others, the complainant has not sustained the burden of proof on the proposition which alone would entitle him to recover. It becomes the duty of the trial court to direct a verdict because failing to do so would cause any verdict to the contrary to be based on pure speculation and conjecture.

*E.H. Renner & Sons, Inc. v. Primus*, 295 Minn. 240, 243–44, 203 N.W.2d 832, 835 (1973) (citing *Village of Plummer v. Anchor Casualty Co.*, 240 Minn. 355, 357, 61 N.W.2d 225, 227 (1953)).

Although the standards for summary judgment and directed verdict are similar, undue reliance on directed verdict cases when deciding a summary judgment motion is a mistake, especially when determining whether the evidence is "substantial." Directed verdict motions are appropriate only at the close of the evidence offered by an opponent or at the close of all the evidence. Minn.R.Civ.P. 50.01. Thus, the evidence available for review on a motion for directed verdict is typically much more complete than that available to the court on a summary judgment motion. Accordingly, the court in *Murphy* made clear that substantial evidence "refers to legal sufficiency and not quantum of evidence." *Murphy*, 307 Minn. at 352, 240 N.W.2d at 512.

Further, reliance on *Renner* distorts a proper view of Louwagie's burden of proof. Although the trial court may have been correct in evaluating inferences raised by the circumstantial evidence, before granting summary judgment the court must also draw all factual inferences in favor of Louwagie, the nonmoving party. The court must also consider the impact of the direct evidence on the case. The court may not decide the factual issues, but must only decide whether genuine factual issues exist.

### DECISION

The inferences raised here by the evidence before the court create a genuine issue of material fact as to the identities of the manufacturer and supplier of the insulation installed by Morgan in Louwagie's shed, and the order granting summary judgment was in error.

Reversed and remanded.