Don R. SPEER, Appellant,

v.

OTTAWAY NEWSPAPERS,
INC., Appellee.

Don R. SPEER, Appellee,

v.

OTTAWAY NEWSPAPERS,
INC., Appellant.

Nos. 86–2180, 86–2222.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1987.

Decided Sept. 9, 1987.

Michael W. Manners, Independence, Mo., for appellant.

Charles Buchanan, Joplin, Mo., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Don R. Speer, a police officer, appeals the entry of judgment notwithstanding the verdict against him in his libel suit against Ottaway Newspapers, Inc., owner of the Joplin, Missouri, *Globe*. The district court based its posttrial ruling on the insufficiency of evidence to establish the *Globe's* actual malice. Speer argues the court committed error in refusing to attribute to the *Globe* the knowledge of its reporter gained in the course of his employment, regardless of the nature of the reporter's role in the publication of the libelous statement. We affirm.

Max McCoy, a reporter for the *Globe*, was arrested by Speer on April 23, 1983, while taking photographs at a demonstration in front of a gay bar. McCoy told *Globe* editors Speer and the other police officers present used excessive force in making the arrest. An article reflecting both the police's and McCoy's versions of the incident, written by another *Globe* reporter, appeared in the *Globe* the next day. On April 26 the *Globe* published an editorial condemning Speer's conduct at the demonstration and stating specifically that

while McCoy was "cuffed and defenseless, the officers continued to strike him, kick him." This statement became the basis for Speer's claim of libel as submitted to the jury, and the jury awarded Speer $100,000 actual damages and $50,000 punitive damages.

A jury believing the evidence introduced by Speer and discounting conflicting testimony could determine McCoy knew the account of the arrest he relayed to *Globe* editors was false and that the *Globe's* editorial incorporated some portion of McCoy's falsehood. Under the first amendment, however, Speer's award may be reinstated only if the *Globe* published the offending statement with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). Speer did not challenge the district court's instruction requiring the jury to find actual malice on the part of "the officers or employees of [the *Globe*] having responsibility for the publication of such statement," *see id.* at 287, 84 S.Ct. at 730, and the district court granted judgment notwithstanding the verdict on the ground Speer failed to offer adequate evidence on this issue.

The issues we must decide are first, whether under the record in this case Speer has established with convincing clarity, *see id.* at 285–86, 84 S.Ct. at 728–29, that McCoy was a person "having responsibility for the publication" of the April 26 editorial. If he was, his knowledge of falsity was effectively made known to the *Globe* and the *Globe* may be held liable to Speer. Second, if McCoy was not responsible for the editorial's publication, we must determine if those persons who were responsible either knew McCoy was lying or published with reckless disregard for whether or not he was telling the truth.

On review we make an independent examination of the whole record to ensure the principles of actual malice have been constitutionally applied. *Id.* at 285, 84 S.Ct. at 728–29; *see generally Bose Corp. v. Consumers Union of United States, Inc.*, 466

U.S. 485, 501–11, 506 n. 25, 104 S.Ct. 1949, 1959–65, 1963 n. 25, 80 L.Ed.2d 502 (1984). This duty of review cannot be delegated, regardless of whether the trier of fact is judge or jury. *Bose Corp.*, 466 U.S. at 501, 104 S.Ct. at 1959. Our obligation is independently to judge whether Speer has established by clear and convincing evidence, *see id.* at 511, 513, 104 S.Ct. at 1965, 1966–67; *New York Times*, 376 U.S. at 285–86, 84 S.Ct. at 728–29, that the *Globe's* editorial is not entitled to first amendment protection in this case.

■ Speer to establish the *Globe's* actual malice argues McCoy was acting in the course and scope of his employment when he covered the demonstration and when he transmitted his false version of the arrest incident to his superiors. Thus, Speer claims the *Globe* is vicariously liable because McCoy's state of mind (actual knowledge of the falsity) is imputed to the *Globe* under traditional principles of respondeat superior. *See, e.g., Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 253–54, 95 S.Ct. 465, 471, 42 L.Ed.2d 419 (1974) (publisher vicariously liable when sufficient evidence for jury to find reporter's own writing of feature story was within scope of his employment); *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1139–40 (7th Cir. 1985) (magazine liable under respondeat superior when photography editor fraudulently obtained release to print photographs). The difficulty with Speer's argument is that based on essentially undisputed facts in this case, the district court found a lack of clear and convincing evidence McCoy had anything to do with publication of the challenged editorial. We agree.

■ McCoy after his arrest was taken off the story of the April 23 demonstration, and his input into the editorial was limited to several meetings with *Globe* editors during which he was treated like any other outside source. He had no input in suggesting the topic for the editorial, making recommendations regarding the editorial's content, writing or reviewing the editorial before publication, or deciding whether the editorial would be published. He also did not exercise on behalf of the *Globe* any

editorial judgment through the compilation, assimilation, evaluation, or presentation in print, of fact or opinion. Photographs McCoy took at the demonstration were not used in connection with the editorial. In short, McCoy contributed to the *Globe's* publication of the editorial only to the same degree as would any other citizen who participated in, became involved in, or observed a news event and provided the *Globe* with a firsthand account. A reporter like McCoy, who is relegated solely to the role of an outside source and who has nothing to do with publication of the libelous material, is not responsible on behalf of a news organization for the ultimate publication of information given. Thus, a finding of institutional actual malice by the *Globe* may not be based only on McCoy's state of mind.

In refusing to hold the *Globe* liable here based only on McCoy's knowledge we neither grant newspapers free rein to rely on deceitful employees nor establish a rule so inflexible as to create the specter Speer suggests of newspapers shielding themselves from liability by separating the writing and reporting functions. Speer implies publishers could thus insulate themselves by effectively preventing the actual malice state of mind from ever being "brought home to the persons in the [news] organization having responsibility for the publication." *New York Times*, 376 U.S. at 287, 84 S.Ct. at 730. We need not here determine the exact contours of the *New York Times* requirement, however, because McCoy for the purposes of this editorial was treated by his editors solely as an outside source. Given McCoy's singular role in the editorial process, the district court properly refused under *New York Times* to impute McCoy's knowledge to the *Globe*.

Even if McCoy was not responsible for publication of the editorial, the *Globe* may still be liable if some person having responsibility for the editorial published the commentary with the sort of actual malice defined in *New York Times*. There is no evidence in the record, nor does Speer argue, that the persons at the *Globe* who

were responsible for publication of the April 26 editorial had actual knowledge McCoy was lying. Rather, Speer argues those persons acted with reckless disregard for the truth. Speer to prove reckless disregard had to show the *Globe* published the April 26 editorial despite a "high degree of awareness of [the] probable falsity" of the editorial's content. *See Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). In evaluating the *Globe's* actions,

> reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

 A newspaper cannot automatically shield itself from a finding of actual malice by asserting, as the *Globe* does here, that it published with a good faith belief the offending statements were true. *Id.* at 732, 88 S.Ct. at 1326. A plaintiff is free to prove, for example, the story was entirely the product of the newspaper's imagination, the newspaper had reason to doubt the veracity of its sources, or the story was so implausible that only a reckless person would have published it. *Id.*

The *Globe* in this case, however, had no reason to doubt its source, because it knew McCoy as a trusted employee and believed him to be reliable, honest, and good with details. The *Globe* also knew from McCoy's physical injuries and broken camera the arrest had been other than an ordinary, peaceful incident; thus, McCoy's story was not inherently improbable. Neither is actual malice suggested by the *Globe's* failure to interview Speer or any of three other citizen witnesses identified in the police report or by the *Globe's* failure to heed the phone call from a demonstrator warning McCoy's story was a "pack of lies."

The *Globe* already knew both versions of the arrest, and at least two eyewitnesses had corroborated McCoy's version.

 The record before us does not suggest with convincing clarity other than that the *Globe* published the April 26 editorial with knowledge of conflicting versions of the arrest. In hindsight it may well have been prudent journalistic practice to pursue known leads on the story. Not to do so in some circumstances might conceivably suggest professional negligence. Even so, a negligent failure to investigate does not itself establish recklessness for purposes of a libel suit. *St. Amant,* 390 U.S. at 733, 88 S.Ct. at 1326–27; *New York Times,* 376 U.S. at 288, 84 S.Ct. at 730.

 The record shows McCoy's story was not inherently improbable, and there is no evidence to suggest the story generated serious doubts of the type showing reckless disregard of the truth by those responsible for the editorial's publication. A publisher's failure accurately to guess which of two conflicting accounts a jury might later believe does not demonstrate actual malice. A newspaper may not constitutionally be required to determine truth by counting the number of witnesses on each side. To find liability in these circumstances would undermine the purpose for which the Supreme Court in *New York Times* adopted the actual malice requirement—to prevent the self-censorship that may arise if a critic of official conduct were compelled to guarantee the actual truth of all factual assertions on pain of a libel judgment virtually unlimited in amount. *See* 376 U.S. at 279, 84 S.Ct. at 725. *New York Times* did not require the *Globe* to be right or be silent, but only to refrain from stating facts in its editorial with knowledge those facts were false or with reckless disregard of their truth or falsity.

Because Speer did not make a submissible case on McCoy's responsibility for the publication or on actual malice by those who were responsible, the district court did not commit error in granting the *Globe* judgment notwithstanding the verdict. In light of our disposition of the actual malice

issues, we need not consider the *Globe's* cross-appeal. We affirm.