**Ray CONNELLY, Appellant,**

*v.*

**NORTHWEST PUBLICATIONS, INC., d/b/a St. Paul Pioneer Press & Dispatch, et al., Respondents.**

**No. C4–89–1129.**

Court of Appeals of Minnesota.

Dec. 12, 1989.

Review Denied Feb. 21, 1990.

Denise M. Norton, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellant.

Paul R. Hannah, St. Paul, for respondents.

Heard, considered, and decided by SCHUMACHER, P.J., GARDEBRING and LESLIE,* JJ.

## OPINION

GARDEBRING, Judge.

The trial court granted respondents' motion for summary judgment on the issue of actual malice and this appeal followed. We affirm.

* Acting as judge of the Court of Appeals by ap-

## FACTS

In late 1969 or early 1970, appellant Ray Connelly obtained an interest in Apple Valley Development Partnership in which Robert Daly was also a partner. Connelly was one of seven partners involved in the Development Partnership. The partnership's purpose was to purchase property and resell it for profit.

In the late 1970's, Connelly was first appointed as a condemnation commissioner in Dakota County. At no time subsequent to his first appointment was any property which he owned personally or through Apple Valley Development Partnership condemned. While serving as a condemnation commissioner he remained a member of the Apple Valley Development Partnership.

In the spring of 1983, Connelly was appointed as commissioner on property owned in part by Robert Daly. Connelly made disclosure to the State of Minnesota by contacting Lou Robards, the assistant attorney general on the case. He explained his business relationship with Daly. Connelly explained he had no business interest in the condemned property and Robards made no objection to Connelly serving as a commissioner.

In the spring of 1984, respondent St. Paul Pioneer Press and Dispatch reporters Allen Short and Lucy Dalglish obtained a copy of an FBI memorandum relating to an investigation of the condemnation process in Dakota County. The FBI memorandum contained names of Dakota County judges and condemnation commissioners. It identified condemned parcels and specified potential conflicts. Connelly's name was not mentioned in the memorandum.

Respondents' investigation identified four commissioners who either owned land involved in condemnation proceedings or served in proceedings involving property of relatives or business associates. They learned Connelly had been commissioner in at least two condemnation proceedings involving property in which two of his partners, Robert and Leo Daly, had an interest.

pointment pursuant to Minn. Const. art. 6, § 2.

Respondents interviewed the four commissioners. When interviewed, Connelly told respondents of his conversation with Robards.

On August 26, 1984, the St. Paul Pioneer Press and Dispatch published the article, "Land Sale Conflicts Uncovered." The article stated the authors had been informed of an FBI investigation of the condemnation process in Dakota County. It also identified apparent conflicts of interest and discussed the positions of several officials, including Connelly's, on the alleged conflicts.

Connelly alleged nine statements in the article were defamatory. Respondents moved for summary judgment arguing Connelly could not show the article was defamatory or that actual malice existed. The trial court found an issue of material fact existed as to the claim of defamation; however, the trial court granted respondents' summary judgment on the issue of actual malice.

## ISSUE

Did the trial court err in granting summary judgment on the issue of actual malice?

## ANALYSIS

### Standard of Review

On appeal from summary judgment, the function of the appellate court is limited to determining whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the nonmoving party. *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

### Actual Malice

■ The trial court granted summary judgment because Connelly failed to make an adequate showing of actual malice. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The first amendment precludes damages for a defamed public official unless the statement was made with actual malice. Actual malice is defined as "knowledge that [the statement] was false or * * * reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. at 725–26. This showing must be made with convincing clarity. *Id.* at 285–86, 84 S.Ct. at 728–29.

■ Reckless conduct is not measured by whether a reasonably prudent person would have published or would have investigated before publishing. *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). Instead, the defamatory statement must have been published with an awareness of its probable falsity, as demonstrated by "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Hirman v. Rogers,* 257 N.W.2d 563, 566 (Minn.1977) (quoting *St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1325). Moreover, when the factual question concerns actual malice

> the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (footnote omitted). We acknowledge *Anderson* interprets the Federal Rules of Civil Procedure; however, its reasoning is persuasive in this case.

As a preliminary matter, it should be noted Connelly argued that summary judgment is inappropriate, when, as in this case, the defendant's state of mind is at issue. We disagree. We find unconvincing Connelly's assertion that case law interpreting qualified privileges and common law malice guide our decision on this issue. The cases cited by Connelly do not construe actual malice in the constitutional sense. *See Frankson v. Design Space International,* 394 N.W.2d 140, 144 (Minn.1986); *Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876, 890–91 (Minn.1986). Thus, they do not consider the *New York Times*

constitutional guarantees accorded defendants, and are therefore irrelevant to our analysis.

The Supreme Court presented certain examples of conduct that might constitute actual malice:

> Professions of good faith [on the part of the publisher] will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.

*St. Amant*, 390 U.S. at 732, 88 S.Ct. at 1326. Actual malice is not fully encompassed in one infallible definition. *Id.* at 730, 88 S.Ct. at 1325. These examples of actual malice, however, show Connelly must overcome a substantial burden of proof to prevail in his claim.

Respondents neither fabricated this article nor imagined Connelly's alleged conflict. In fact, the record shows the reporters conducted an extended investigation prior to its preparation. After being informed of the FBI investigation into the condemnation process in Dakota County, respondents reviewed hundreds of Department of Transportation files on condemned property, spoke to county and state officials, and interviewed Connelly and other condemnation commissioners. Nonetheless, respondents' preparation is not dispositive of the issue of actual malice.

To show respondents in fact entertained serious doubts as to the truth of their publication, Connelly presented circumstantial evidence. *See Harte–Hanks Communications, Inc. v. Connaughton*, —— U.S. ——, 109 S.Ct. 2678, 2686, 105 L.Ed.2d 562 (1989). Connelly relies upon a large number of factors, including failure to investigate prior to publication, lack of a deadline, doubt as to veracity of a source, inherent improbability of the article, selecting the most damaging inferences, suppressing evidence most favorable to Connelly, motive or intent behind the story, failure to re-tract, and respondents' knowledge of likely harm following publication.

The record reveals most of the factors examined by Connelly fail to provide evidence of actual malice. Four factors, while not rising to the requisite level of clear and convincing evidence, are more persuasive and are discussed below.

■ First, Connelly argues respondents failed to adequately investigate the article. Mere failure to investigate an article before publication can never, standing alone, establish actual malice. *See Speer v. Ottaway Newspapers, Inc.*, 828 F.2d 475, 478 (8th Cir.1987), *cert. denied*, 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988). Failure to investigate may provide evidence of negligence. It does not establish knowledge of falsity or serious doubt about the truth of the story. *See Fitzgerald v. Minnesota Chiropractic Association, Inc.*, 294 N.W.2d 269, 270 (Minn.1980) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).

■ Connelly asserts that had respondents followed up on Connelly's discussion with Robards, they would have discovered Robards waived Connelly's conflict with his business partner. Failure to do so, according to Connelly, creates an issue of fact as to respondents' reckless disregard for the truth. We disagree. The discovery of Robards' waiver would not have significantly changed the nature of the article. Serving as a condemnation commissioner, Connelly was still in a position, waiver or no waiver, to benefit his business partner by determining the value of property. Moreover, during respondents' research they discovered Connelly served as commissioner in at least one other proceeding in which his partner had an interest. On this occasion he did not contact Robards. While possibly negligent in not discussing the alleged waiver of conflict with Robards, respondents' failure to contact him does not show respondents entertained serious doubts as to the truth of their assertions.

■ Second, Connelly argues the article's inherent improbability constitutes suf-

ficient evidence to preclude summary judgment. A defendant is not likely to prevail when its "allegations are so inherently improbable that only a reckless man would have put them in circulation." *St. Amant,* 390 U.S. at 732, 88 S.Ct. at 1326. Connelly's argument is without merit. Documents from the Department of Transportation and an FBI investigation and report indicated conflicts of interest existed in Dakota County. Moreover, Connelly served as commissioner on two condemnation cases involving property in which his partners had ownership interests. Connelly's involvement in possible conflicts of interest was therefore not inherently improbable.

■ Connelly also asserts respondents' use of unreliable sources and their failure to retract the article are probative of actual malice. "[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* (footnote omitted). In this case, however, respondents used an FBI report, corroborated by research of Department of Transportation documents, the records of the Dakota County recorder and auditor, and interviews with Dakota county officials and condemnation commissioners to support their article. The record does not indicate that obvious reasons existed for respondents to doubt the accuracy or trustworthiness of their sources.

■ Furthermore, respondents' failure to retract the article is not probative of actual malice. Indeed, in this case respondent's decision not to retract after discussing Connelly's retraction demand provides some evidence they reasonably believed Connelly had not been defamed. *See New York Times,* 376 U.S. at 286–87, 84 S.Ct. at 729.

Summary judgment was properly granted. There is insufficient evidence to show that respondents had actual knowledge that any information in the article was false, or that respondents entertained serious doubts as to the truth of the information published. While respondents were perhaps negligent in failing to interview Robards, that alone is insufficient evidence to show actual malice.

**DECISION**

The trial court correctly granted summary judgment for respondents.

Affirmed.

DAVID R. LESLIE, Judge (dissenting).

I respectfully dissent. I am of the opinion that appellant raised a genuine issue of material fact which requires a trial of this defamation claim, including a jury determination on the issue of actual malice. Further, the trial court erred as a matter of law when it concluded appellant provided no evidence of actual malice and raised no "material issue of fact which if resolved in his favor would show actual malice."

A motion for summary judgment may be granted only if, after taking the view of the evidence most favorable to the nonmoving party, the movant has clearly sustained his burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Sauter v. Sauter,* 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955); *Louwagie v. Witco Chemical Corp.,* 378 N.W.2d 63, 66 (Minn.Ct.App.1985). "All doubts and factual inferences must be resolved against the moving party." *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981).

It has been well settled under Minn.R. Civ.P. 56.03 that

[a]lthough summary judgment is intended to secure a just, speedy, and inexpensive disposition, it is not intended as a substitute for trial where there are fact issues to be determined. *Sauter v. Sauter,* 244 Minn. 482, 70 N.W.2d 351 (1955). The inquiry of the trial court in its consideration of a motion for summary judgment is *whether or not any genuine issues of material fact exist, not how such issues should be resolved. Hinrichs v. Farmers Cooperative Grain & Seed Association,* 333 N.W.2d 639, 641 (Minn.1983).

*Vacura v. Haar's Equipment, Inc.,* 364 N.W.2d 387, 391 (Minn.1985) (emphasis added). Summary judgment is improper unless the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03; *Abdallah, Inc. v. Martin,* 242 Minn. 416, 65 N.W.2d 641 (1954).

Neither the respondent, the trial court, nor the majority opinion here have demonstrated that no genuine issue of material fact exists with respect to actual malice. Rather, they have attempted to resolve the fact issues raised by appellant; this is improper in a summary judgment context.

A public official cannot recover damages for a defamatory statement relating to his official conduct unless he can prove the statement "was made with 'actual malice' —that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280–81, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). In *New York Times,* the United States Supreme Court independently examined the evidence in the record, which included a full trial, verdict, and judgment entered in favor of a defamation plaintiff. *Id.* at 284–86, 84 S.Ct. at 728. The Court concluded that the "proof presented to show actual malice" lacked the " *convincing clarity*" required under the constitutional standard and thus could not sustain the judgment. *Id.* at 285–86, 84 S.Ct. at 728–29 (emphasis added).

More recently, the Supreme Court held that "at both the directed verdict and summary judgment stages" the decision whether to submit a given factual dispute to a jury "must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). As there is dispute here over an issue of material fact—actual malice—and this is a *New York Times* case, we must ask the following question on summary judgment in order to adhere to the *Anderson* rule:

> [W]hether the evidence in the record *could* support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

*Id.* at 255–56, 106 S.Ct. at 2513–14 (footnote omitted) (emphasis added).[1]

Although the trial court did not expressly cite the *Anderson* case, it was argued by the parties and the court discussed the clear and convincing evidence standard. Regardless of the trial court's approach, the issue of actual malice in a summary judgment context must be discussed within the framework of *Anderson, New York Times,* and other decisions of the United States Supreme Court.

"[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson* at 254, 106 S.Ct. at 2513. Even taking into account the clear and convincing burden of proof, a burden which the plaintiff must meet to show actual malice at trial, I would hold that a genuine issue

---

1. Like Justice Brennan, who wrote the majority opinion in *New York Times,* I have difficulty applying the *Anderson* rule. In a vigorous dissent in *Anderson,* he stated:

> I simply cannot square the direction [of *Anderson* at 249, 106 S.Ct. at 2510] that the judge "is not himself to weigh the evidence" with the direction [at 254, 106 S.Ct. at 2513] that the judge also bear in mind the "quantum" of proof required and consider whether the evidence is of sufficient "caliber or quantity" to meet that "quantum." I would have thought that a determination of the "caliber and quantity," *i.e.,* the importance and value, of the evidence in light of the "quantum," *i.e.,* amount "required," could *only* be performed by weighing the evidence.

> If in fact, this is what the Court would, under today's decision, require of district courts, then I am fearful that this new rule—for this surely would be a brand new procedure—will transform what is meant to provide an expedited "summary" procedure into a full-blown paper trial on the merits.

*Anderson* at 266–67, 106 S.Ct. at 2519 (Brennan, J., dissenting).

Thus, the *Anderson* rule should be applied with caution, in order to prevent courts from, in fact, weighing the evidence on summary judgment and resolving fact questions which should be resolved by a jury. If the *Anderson* rule is improperly applied, the "constitutionally enshrined role of the jury," and the "usefulness of the summary judgment procedure" will be eroded. *Id.* at 268, 106 S.Ct. at 2520.

of material fact exists here. Respondents failed to meet their "initial responsibility" of demonstrating the absence of a material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

It should be noted that Connelly's name was not mentioned in the FBI memorandum which the trial court found the reporters obtained. The reporters found Connelly's name through researching condemnation records. Respondents then grouped Connelly together with three other condemnation commissioners who were reported in the article to have conflicts. Whatever information the reporters obtained regarding conflicts or problems in the condemnation process in general, or conflicts the other three commissioners may have had, is not relevant here. Rather, the truth of the article with respect to Connelly is relevant. Contrary to the implication of the article, and as the trial court found,

> Connelly had never been a Commissioner when property in which he had a direct financial interest was condemned. Connelly never served as a Commissioner on any property in which one of his relatives had a financial interest.

Thus, a genuine issue of material fact was raised that statements in the article were of a defamatory nature and the trial court properly denied summary judgment on that issue.

The next step is to consider the actual malice issue. Evidence of either deliberate falsification or reckless publication, "despite the publisher's awareness of probable falsity," is essential to recovery in public official defamation cases. *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) (quoting *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 153, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094 (1967)).

> There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*Id.*

Respondents argued that they made a detailed investigation, used reliable sources, interviewed Connelly and others, carefully considered whether to publish the article, and thus a jury could not find, by clear and convincing evidence, that respondents entertained serious doubts as to the truth of their article with respect to Connelly. The trial court, citing *St. Amant,* agreed, concluding Connelly "has not provided any evidence which would permit the inference that [respondents] *in fact* entertained serious doubts as to the truth of the publication."

As Justice Black stated, concurring in *New York Times,* malice is an "elusive, abstract concept, hard to prove and hard to disprove." *New York Times,* 376 U.S. at 293, 84 S.Ct. at 733; *Mahnke v. Northwest Publications, Inc.,* 280 Minn. 328, 338, 160 N.W.2d 1, 8 (1968). Although findings by the trial court are not required under either the state or the federal rule 56, they are preferred. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Here, the trial court issued a legal memorandum with the summary judgment, but did not specifically discuss or apply the law of actual malice to the central evidence in this case: Connelly's conversation with the attorney general and his subsequent relation of that conversation to reporter Short. Respondents also failed to meet their initial burden of showing that this evidence, viewed in the light most favorable to Connelly, did not raise a material issue of fact. *See Time, Inc. v. Ragano,* 427 F.2d 219, 221 (5th Cir.1970) ("all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion for summary judgment").

The headline of respondents' article was "Land Sale Conflicts Uncovered." In fact, if the deposition testimony is to be believed, Connelly himself "uncovered" the only potential conflict contained in the article when he asked the attorney general about it. The attorney general indicated it was not a conflict for Connelly to partic-

ipate in condemnation proceedings where one of Connelly's business partners had an interest in the subject land.

Although Connelly gave respondents this explanation of his conduct, respondents apparently ignored it, both in the investigation and in the publication of the article. Clearly, this information should have caused respondents to entertain serious doubts about the truth of the publication with respect to Connelly.

The evidence that, as far as the attorney general was concerned, Connelly did not have a conflict and that respondents chose not to report this information, at least raises a genuine issue of material fact that respondents published the article with reckless disregard for the truth, demonstrating actual malice. *St. Amant,* 390 U.S. at 731, 88 S.Ct. at 1325.

"[R]ecklessness may be found where there are obvious reasons to doubt" the veracity or accuracy of a source. *See Harte–Hanks Communications, Inc. v. Connaughton,* —— U.S. ——, ——, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989); *St. Amant,* 390 U.S. at 732, 88 S.Ct. at 1326. Here, there was no FBI informant or third party alleging that Connelly had a conflict. The only source respondents relied on were condemnation records. There is nothing in the record to indicate that these documents define what a legal or ethical conflict of interest is, or that Connelly's reported conduct violated Dakota County condemnation procedures. Nor is there any evidence that respondents consulted any source as to what the law of Minnesota provides on that issue. In short, respondents have presented no evidence to show support for their conclusion that Connelly's participation in the condemnation proceedings described in the article was in fact a conflict of interest. Yet their article made this conclusion, contrary to the only information respondents acquired on that specific issue: the statements of Connelly and the attorney general. Respondents clearly failed to investigate or report that information. The purposeful avoidance of the truth will show actual malice. *See Harte–Hanks,* —— U.S. at ——, 109 S.Ct. at 2698.

I am not persuaded by the majority's post hoc assertion that because Connelly stood to benefit, he was in fact engaged in a conflict. No law is cited for this proposition. If the majority is referring to an ethical rather than a legal conflict of interest, the issue becomes more clouded. However, if an ethical conflict was claimed in the article, the recklessness of respondents in failing to report or investigate appellant's and the attorney general's statements denying unethical conduct would constitute actual malice.

I am compelled to make two additional comments. First, I believe this court to be in error in using prior or subsequent conduct to support a summary judgment, particularly when we have no way of judging the probative value of such conduct. Plaintiff, in a trial, should be afforded the opportunity to explain such conduct before the court and/or the jury passes on its relevancy. Second, the majority's recognition that respondents were "perhaps" negligent is an interesting concession. Whether the failure to interview Robards as well as other shortcomings alleged by the plaintiff constitute mere negligence should, in my opinion, be determined by the jury only after all the facts have been presented.

Finally, this dissent does not attempt to predict whether Connelly would prevail in a trial of this matter, as the majority makes clear a public figure defamation plaintiff has an extremely difficult burden of proof. Indeed, the result may be the same. Our chief concern at the summary judgment stage should be whether he gets his day in court. At this point, I am not persuaded that he has had his day in court.

As a genuine issue of material fact exists here, even looking through the *Anderson* prism of the clear and convincing evidence standard, I would reverse and remand for a trial.