**Neil STUEMPGES, Respondent,**

v.

**PARKE, DAVIS & COMPANY, Appellant.**

**No. 49951.**

Supreme Court of Minnesota.

July 3, 1980.

Faegre & Benson, James M. Samples, and John P. Borger, Minneapolis, for appellant; Edward J. Gall, Morris Plains, N. J., of counsel.

Chestnut & Brooks, Karl L. Cambronne, and Thomas H. Graham, Minneapolis, for respondent.

SHERAN, Chief Justice.

This is an appeal by Parke, Davis & Company challenging a jury verdict that plaintiff-respondent Neil Stuempges had been defamed by Parke Davis employees and its award of $17,250 for actual pecuniary loss, $10,500 in compensatory damages and $10,000 in punitive damages. We affirm.

Viewing the facts in the light most favorable to the prevailing party, as we must do on appeal, *Blasing v. P. R. L. Hardenbergh Co.*, 303 Minn. 41, 47, 226 N.W.2d 110, 114 (1975), they can be stated as follows: Parke Davis, a pharmaceutical manufacturer, employed Neil Stuempges as one of its Minneapolis sales representatives for sixteen years from 1958 until February 25, 1974, when it asked him to resign or be fired. During the first fifteen years of his employment, Stuempges had never been disparaged for his lack of ability as a salesperson and had even received commendations over the years for his outstanding behavior. In the period from 1969 through 1973, for example, Stuempges won awards for his sales performance in promoting specific drugs. One of the awards he received in 1973 was presented by the president of the company and involved as a prize a free trip to the Bahamas. He was also often asked to train new salespersons in how to call on physicians and retailers.

In July, 1973, Robert Jones became the new district manager of the Minneapolis area in which Stuempges' sales territory was located. From the beginning, they clashed in their approaches to a number of issues. Jones felt that Stuempges incorrectly "sold on the basis of friendship" rather than using planned presentations, which Stuempges rejected as "canned." Stuempges refused to conduct a drug survey instituted by Jones because he believed that reviewing prescription records on file with pharmacies was an unethical invasion of patients' privacy. There was also friction between them regarding the change in Stuempges' sales territory and Stuempges' refusal to set what Jones considered to be sufficiently high goals for his sales performance.

On February 25, 1974, at Jones' request, Stuempges met with him and Donald Burgett, Jones' immediate supervisor. At this meeting Stuempges was asked to resign and was promised a good recommendation if he did so. If he refused to resign, however, Jones told him that he would be "blackballed" in the industry. Shortly thereafter, Stuempges submitted his resignation.

On March 5, 1974, Stuempges sought assistance in finding another job through Sales Consultants, Inc., an employment agency specializing in sales personnel. He was interviewed by Robert Hammer, at which time he listed Parke Davis as his most recent employer and Jones as his most recent supervisor and gave permission for Sales Consultants to check his references at Parke Davis. At this meeting Hammer told him that he "was a terrific piece of flesh to sell, had a terrific sales record, and there would be no problems whatsoever in placing [him] in a similar position."

Shortly after Stuempges left, Hammer called Jones for a reference. Jones told Hammer that Stuempges was a poor salesperson and was not industrious and that he was fired because he sold on friendship, would not get products out, was hard to motivate and could not sell. He concluded their conversation by telling Hammer that Stuempges did not belong in sales. As a result of what Hammer characterized to Stuempges as the worst recommendation he had ever received, he told Stuempges that he would not try to place him.

When Jones' superiors at Parke Davis heard about his conversation with Hammer, they attempted to rectify the situation. A few weeks after the fateful conversation Hammer received a call from Robert Luchsinger, the Parke Davis regional manager who told him to discard Jones' reference check and promised that, if further references were needed for Stuempges, Luchsinger would provide excellent ones. Another former supervisor of Stuempges also called Hammer and volunteered a good reference. Nevertheless, Hammer continued to refuse to find potential employment for Stuempges.

In July, 1974, Stuempges took a franchise dealership for American LaFrance fire equipment. He was paid on straight commission and did not begin to derive "net income" from this job until July, 1975.

In June, 1974, Stuempges initiated this defamation action. The jury trial took place between January 8 and January 16, 1979, when the issues of fact were submitted to the jury upon special verdict. The jury returned a verdict for plaintiff, and the court awarded him judgment in the amount of $37,750. Defendant sought a judgment notwithstanding the verdict or a new trial, and it is from the order denying these motions that it appeals.

The following issues are presented by this appeal:

1. Were appellant's statements non-defamatory because they were true?

2. Were the statements qualifiedly privileged and thus not actionable?

3. Did the trial court correctly instruct the jury on the definition of malice?

4. Were the damage awards proper?

■ 1. The elements of a common law defamation action are well settled. In order for a statement to be considered defamatory it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community. Restatement (Second) of Torts §§ 558–559 (1977); W. Prosser, *Handbook of the Law of Torts* § 111 at 739 (4th ed. 1971). Slanders affecting the plaintiff in his business, trade, profession, office or calling are slanders *per se* and thus actionable without any proof of actual damages. *Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn.1977); W. Prosser, *supra*, § 112 at 754. Truth, however, is a complete defense, and true statements, however disparaging, are not actionable.

■ Although Jones' words to Hammer clearly related to Stuempges' reputation in his profession, Parke Davis contends that they were not slanderous because substan-

tially true.[1] It points to evidence in the record that Stuempges sold on the basis of friendship, that he had poor sales results, that his sales record was poor or average as compared to others', that he was not industrious and was hard to motivate, and that he should not be in sales. Stuempges' version of the story, however, suggested that he was, in fact, a good salesperson and that Jones' characterization of his performance was false. Stuempges introduced evidence that during his sixteen years of employment at Parke Davis he had received various commendations for his competence as a salesperson[2] and that he had never been disparaged for lack of sales ability prior to the arrival of Jones. Stuempges further testified that at the meeting held on February 25, 1974, both Jones and Burgett told him that he would be given a good recommendation to potential employers if he resigned as requested. Evidence was also introduced that, subsequent to the damaging telephone conversation between Jones and Hammer, Luchsinger and possibly Burgett told Hammer that they would provide a favorable recommendation for Stuempges and that he should disregard what Jones had said. Finally, there are indications in the record that Jones himself acknowledged the falsity or at least distortion of his statements to Hammer. The jury accepted Stuempges' version and found the statements made by Jones to Hammer to be false.

In reviewing jury verdicts, we permit ourselves only a limited role. All testimony must be considered in the light most favorable to the prevailing party, *Blasing v. P. R. L. Hardenbergh Co.*, 303 Minn. 41, 47, 226 N.W.2d 110, 114 (1975):

*Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 204, 203 N.W.2d 841, 844 (1973), and a verdict will only be disturbed if it is "manifestly and palpably contrary to the evidence." *Carpenter v. Mattison*, 300 Minn. 273, 276, 219 N.W.2d 625, 629 (1974); *Young v. Hansen*, 296 Minn. 430, 433, 209 N.W.2d 392, 395 (1973). Review is even more limited when the jury verdict must consider the demeanor of the witnesses. *Gibeau v. Mayo*, 280 Minn. 170, 175, 158 N.W.2d 589, 592 (1968).

Guided by these principles, we have no choice but to uphold the jury's verdict. There was certainly sufficient evidence to justify its conclusion that, when Jones and Burgett told Stuempges they would give him a good recommendation, they did so because they felt he deserved one. Similarly, the jury was entitled to believe that Luchsinger and Burgett told Hammer to ignore Jones' assessment because it was incorrect.

2. Parke Davis also argues that Jones' statements to Hammer are not defamatory because they were conditionally privileged. Thus, even if the statements were slanders *per se*, by pleading and proving the existence of a conditional privilege, it has rebutted the presumption of common law malice. *McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 96–97, 235 N.W.2d 371, 374 (1975).

Ever since *Hebner v. Great N. Ry.*, 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899), the following have been the elements and effects of conditional privilege in Minnesota:

> The law is that a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must

---

1. Parke Davis also argues that the issue should not have gone to the jury because Jones' statement that Stuempges did not belong in sales was merely an opinion based on specific, disclosed facts conceded to be true. Insofar as the jury found the facts to be untrue, there is no merit to appellant's position. *See Anderson v. Kammeier*, 262 N.W.2d 366 (Minn.1977). Appellant's reliance on *Hett v. Ploetz*, 20 Wis.2d 55, 121 N.W.2d 270 (1963), is misplaced because summary judgment for defendant was there held appropriate not because the state-

ment at issue was an opinion, and thus not defamatory, but because it was conditionally privileged.

2. For example, in 1969 he received an award for the best total volume for one quarter of the year, he was the top producer in the region in the 1970 Vitamin Campaign, and in 1973 he received awards for outstanding sales achievement with the drug Fluogen and he was a national winner in marketing the drug Myadec.

be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

Other jurisdictions take a similar position. *See* W. Prosser, *supra*, § 15 at 786. *See also Houston Belt & Terminal Ry. v. Wherry*, 548 S.W.2d 743 (Tex.Civ.App.1976), appeal dismissed 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977). In the context of employment recommendations, the courts generally recognize a qualified privilege between former and prospective employers as long as the statements are made in good faith and for a legitimate purpose. *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976); *Wynn v. Cole*, 68 Mich.App. 706, 243 N.W.2d 923 (1976); *Cash v. Empire Gas Corp.*, 547 S.W.2d 830 (Mo.App.1977); *Rogozinski v. Airstream by Angell*, 152 N.J.Super. 133, 377 A.2d 807 (1977); *Wash v. Consol. Freightways, Inc.*, 278 Or. 347, 563 P.2d 1205 (1977); *Hett v. Ploetz*, 20 Wis.2d 55, 121 N.W.2d 270 (1963); *Calero v. Del Chem. Corp.*, 68 Wis.2d 487, 228 N.W.2d 737 (1975). Thus, once the defendant has demonstrated the existence of a conditional privilege, the burden shifts to plaintiff to prove that the privilege has been abused, which is generally a question for the jury.[3] W. Prosser, *supra*, § 115 at 796; *Jacron Sales*, 276 Md. at 600, 350 A.2d at 700.

 We agree with Parke Davis that an employer called upon to give information about a former employee should be protected so that he can give an accurate assessment of the employee's qualifications. It is certainly in the public interest that this kind of information be readily available to prospective employers, and we are concerned that, unless a significant privilege is recognized by the courts, employers will decline to evaluate honestly their former

employees' work records. We believe, however, that the falsity of the statements made by Jones to Hammer, after he had on February 25 indicated that he had a favorable impression of Stuempges' capabilities as a salesperson and would give a good recommendation to prospective employers, takes this case out of the realm of privilege.[4] Thus, Parke Davis cannot be relieved of responsibility on the basis of this theory.

 3. The underpinning of Stuempges' defamation action is that Jones was motivated by malice to give him a bad recommendation. It is well-settled in Minnesota that to demonstrate malice in a defamation action the plaintiff must prove that the defendant "made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *McKenzie v. William J. Burns Int'l Detective Agency, Inc.*, 149 Minn. 311, 312, 183 N.W. 516, 517 (1921). *See Hebner v. Great N. Ry.*, 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899). Nevertheless, Parke Davis contends that the trial court erred in instructing the jury with this definition rather than defining malice as "knowledge that [the defamatory falsehood] was false or with reckless disregard of whether it was false or not," which definition is employed by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964), and subsequent libel cases.

 Although there is some language in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), suggesting that the *New York Times* "actual malice" standard applies to all defamation actions, most courts that have been faced with the issue of what malice standard to apply to non-media defendants have found *Gertz* inapplicable. *Roemer v. Retail Credit*

---

3. Thus, we need not consider appellant's contention that the trial court erred by not holding as a matter of law that Jones' statements were conditionally privileged.

4. Stuempges also introduced evidence that would permit the jury to infer that Jones was motivated by malice. This, too, overcomes an employer's conditional privilege to speak badly of an ex-employee.

*Co.,* 44 Cal.App.3d 926, 119 Cal.Rptr. 82 (1975); *Rowe v. Metz,* 195 Colo. 424, 579 P.2d 83 (1978); *Harley-Davidson Motorsports, Inc. v. Markley,* 279 Or. 361, 568 P.2d 1359 (1977); *Wheeler v. Green,* 286 Or. 99, 593 P.2d 777 (1979); *Houston Belt & Terminal Ry. v. Wheery,* 548 S.W.2d 743 (Tex.Civ. App.1976), appeal dismissed, 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977); *Calero v. Del Chem. Corp.,* 68 Wis.2d 487, 228 N.W.2d 737 (1975). *But see Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976); *Marchesi v. Franchino,* 283 Md. 131, 387 A.2d 1129 (1978); *Wynn v. Cole,* 91 Mich.App. 517, 284 N.W.2d 144 (1979). We agree that the *New York Times* "actual malice" standard was fashioned as an exception to the common law rule to permit the printed and electronic media to perform their function of informing the public about newsworthy people and events without undue fear of defamation liability. Thus, its focus on the defendant's *attitude toward the truth* of what he has said rather than on his *attitude toward the plaintiff* is proper only when a media defendant is involved.[5]

 In the employer-employee situation different considerations apply. While an employer should certainly be free to give opinions and information to persons legitimately making inquiry, particularly when listed as a reference, it is also important to protect the job seeker from malicious undercutting by a former employer. In this context the state of mind of the utterer of the alleged defamation is more significant than whether he knew that what he was saying was false.

 Using the common law definition of malice, we cannot say that the trial court erred in submitting the question of conditional privilege to the jury, *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 276, 350 A.2d 688, 700 (1976); W. Prosser, *supra,* § 115 at 796, or that the jury finding is "manifestly and

palpably contrary to the evidence." *Carpenter v. Mattison,* 300 Minn. 273, 276, 219 N.W.2d 625, 629 (1974); *Young v. Hansen,* 296 Minn. 430, 433, 209 N.W.2d 392, 395 (1973). One of the underpinnings of Stuempges' case was that Jones was motivated by malice toward him and that the statements to Hammer were an attempt to blackball him in the profession. He introduced evidence that a personality conflict existed between him and Jones, that Jones was hostile toward him because he refused to conduct the prescription survey, and that Jones told him during the February 25 meeting that he would be blackballed in the industry unless he resigned. Although Parke Davis introduced contrary evidence, the jury was not compelled to accept its interpretation. Since the evidence supports a jury finding that Jones acted with malice in making the statements to Hammer, it was reasonable for the jury to have determined that the conditional privilege of fair comment concerning the character of a past employee had been abused.

4. Finally, Parke Davis attacks the jury's award of damages to Stuempges. It argues that there was no evidence to support the jury's finding of "pecuniary" and "compensatory" damages, and that, after *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974), it is no longer permissible to award "punitive" damages without a showing that defendant acted with reckless disregard as to the truth of his statement.

 The *general rule regarding* "pecuniary damages" is that the plaintiff can recover only if he proves actual and special pecuniary loss. W. Prosser, *supra,* § 112 at 760. *See also* Restatement (Second) of Torts § 622, Comment a (1977).

> Special harm may be a loss of presently existing advantage, as a discharge from employment. It may also be a failure to realize a reasonable expectation of gain,

---

**5.** This conclusion resolves the question that we left open in *Anderson v. Kammeier,* 262 N.W.2d 366, 372 n.5 (Minn.1977). Since we believe that *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974),

applies only to media defendants, we see no reason to extend its holding that a court cannot award presumed or punitive damages without proof of actual malice to the circumstances of this case. *See* pp. 259–260 *infra.*

as a denial of employment which, but for the currency of the slander, the plaintiff would have received. It is not necessary that he be legally entitled to receive the benefits that are denied to him because of the slander. It is enough that the slander has disappointed his reasonable expectation of receiving a gratuity.

*Id.* § 575, Comment b, at 198.

We believe that Stuempges introduced sufficient evidence to establish a causal relationship between Jones' false statements to Hammer and the actual damages he suffered. When Stuempges was, in effect, terminated after 16 years of sales experience in a pharmaceutical supply company, the key to his securing employment at which he could make a comparable income was the recommendation of his immediate supervisor at Parke Davis at the time of his termination. He knew from the statements that Jones had made to Hammer that anyone who contacted Jones would probably be given a similar report. He had relied upon Jones' February 25 statement that the report would be favorable once, only to find that Jones gave a report quite opposite from what he had anticipated. Based on this evidence, it was reasonable for the jury to conclude that Stuempges was placed in the impossible position of being able to expect nothing but false statements from his immediate supervisor, and that this adequately explained his inability to get employment during the period at issue. Thus, although the evidence is not overwhelming, the amount allowed was not unreasonable, and the proof was about as good as could be expected under the circumstances.

■ Because the false statements uttered by Jones to Hammer are slanders *per se* as defamations of one's business reputation, general damages are presumed, *Frosler v. Lund's State Bank of Vining*, 131 Minn. 435, 438–39, 155 N.W. 619, 620–21 (1915); *Beek v. Nelson*, 126 Minn. 10, 12, 147 N.W. 668, 669 (1914); W. Prosser, *supra*, § 112 at 754, and appellate courts tend to leave the amount to be awarded to the jury's discretion. *Id.* at 761. Although the publication of Jones' remarks was limited,

their devastating quality satisfies us that the jury award of compensatory damages was justified.

■ It is also firmly established in Minnesota that punitive damages can be awarded in cases of defamation *per se* without proof of actual damage to the plaintiff. *See, e. g., Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn.1977); *Loftsgaarden v. Reiling*, 267 Minn. 181, 126 N.W.2d 154, (1964) *cert. denied*, 379 U.S. 854, 85 S.Ct. 31, 13 L.Ed.2d 50 (1965).

The main reason for punitive damages in [such] actions * * * is to deter false, malicious and provocative attacks upon a persons' (sic) reputation. * * * The defendant whose false charges have been circulated should not be the beneficiary of the circumstance that the plaintiff's character is so well established among his business and professional associates as to preclude proof of specific loss springing from communication of the libel.

*Id.* at 182–83, 126 N.W.2d at 154–55 (footnotes omitted).

■ Since the amount of punitive damages to award is a decision that is almost exclusively within the province of the jury, we will not disturb the award on appeal unless it is so excessive as to be unreasonable. *Hammersten v. Reiling*, 262 Minn. 200, 209, 115 N.W.2d 259, 266, *cert. denied*, 371 U.S. 862, 83 S.Ct. 120, 9 L.Ed.2d 100 (1962). Here Stuempges convinced the jury that Parke Davis acted with malice. Because we accept the need to protect employees from such malice by previous employers, this is the type of unsanctioned behavior for which punitive damages are appropriate.

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974), the Supreme Court recognized the legitimacy of deterring defamatory statements through the utilization of punitive damages. Worried that "jury discretion to award punitive damages unnecessarily exacerbates the danger of media self-censorship," the Court imposed the requirement that the plaintiff must first prove "actual

malice." *Id.* Since media self-censorship is not involved in this case and since "[t]he imposition of liability for private defamation does not abridge the freedom of public speech or any other freedom protected by the First Amendment," *New York Times Co. v. Sullivan,* 376 U.S. 254, 301–02, 84 S.Ct. 710, 737–738, 11 L.Ed.2d 686 (1964) (Goldberg, J., concurring), we are free to permit juries to award punitive damages to punish defendants for this type of unsanctioned behavior.

Affirmed.