Martha **ELSTROM,** Appellant,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 270, Hopkins, Minnesota,** Respondent.

No. C3–94–2626.

Court of Appeals of Minnesota.

June 6, 1995.

Review Denied July 27, 1995.

Paul A. Sortland, Sortland Law Office, Minneapolis, for appellant.

William J. Egan, Amy K. Adams, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and SCHUMACHER and PETERSON, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Martha Elstrom challenges summary judgment on her claims for defamation and intentional and negligent infliction of emotional distress. The district court found that qualified privilege protected two of the allegedly defamatory documents, and that Elstrom was a public official and her failure to show actual malice precluded recovery on the remaining document. The court also found that Elstrom did not allege facts establishing an emotional distress claim. We affirm.

## FACTS

Elstrom was a teacher with respondent Independent School District No. 270, Hopkins, Minnesota, from 1963 until 1992, at which time her teaching contract with the school district was terminated for reasons other than those which are the subject matter of this lawsuit. On February 13, 1991, her class at Hopkins High School digressed into a brief discussion of physical attributes associated with race, during which Elstrom commented on characteristics of Asian Americans, African Americans and Caucasians.

The next day, Elstrom was confronted by several students who apparently overheard her in the Language Arts office make critical comments about an African–American honor student's paper. They questioned her about commenting on the relative intelligence of African Americans. Elstrom denied making certain statements, but said she knew of intelligence studies ranking Asians above Caucasians and Caucasians above African Americans, although she questioned their validity. She later discussed this with other teachers, again citing studies. Before class that day, Elstrom asked the only African–American student in the English class if she had been upset by the prior day's discussion. Elstrom claims the student said it had not bothered her.

On February 19, 1991, two racial bias complaints were filed with the district, alleging that Elstrom had made racist remarks in the English class and to staff members while students were present and had forcibly grabbed two students by the arm. Complaints were also filed with the Minnesota Department of Human Rights.

Diane Cowdery, coordinator of affirmative action and human resources, investigated. Her notes from student interviews show that students said physical characteristics of all races were discussed in the classroom discussion, and several students did not believe Elstrom's comments were racist. A teacher recalled Elstrom saying she had discussed physical characteristics, then told the class about the intelligence studies.

Cowdery documented her findings in a memo to Arthur Bruning, the district superintendent. She found that Elstrom had presented "culturally insensitive" information that perpetuated negative stereotypes in the classroom discussion, which had been humiliating for the only African–American student in the class. She also found that Elstrom loudly discussed these incidents in the Language Arts office and defended her statements as documented fact. Cowdery stated that Elstrom's conduct violated district professional standards. Bruning then prepared a response to the human rights complaints, indicating the investigation revealed substantial evidence that Elstrom had made improper comments, perpetuating negative stereotypes.

Elstrom was suspended for 10 days. On April 30, 1991, Thomas Bauman, the principal, sent a letter to students and parents announcing Elstrom's return. The letter said Elstrom had been absent following a report that she had made "inappropriate comments" in class that were found to have "perpetuated negative racial stereotypes" and that Elstrom "expressed regret" over the incident.

The media reported the incidents. Elstrom claims that as a result she suffered from sleeplessness, a fear of answering her door and telephone, crying spells, and depression and, further, that it was difficult for

her to be at school. She believed her reputation suffered as a result of the incidents.

Elstrom sued the district for defamation, based on the Cowdery memo, Bruning response, and Bauman letter, and intentional and negligent infliction of emotional distress. The district court granted summary judgment for the district on all of Elstrom's claims.

## ISSUES

1. Did the district court err in finding, as a matter of law, that the Cowdery memo and Bruning response are protected by a qualified privilege and that there was no proof of actual malice?

2. Did the district court err in ruling that a public school teacher is a public official for defamation purposes and Elstrom therefore had to show actual malice to recover?

3. Did the district court err in granting summary judgment on Elstrom's emotional distress claims?

## ANALYSIS

When reviewing a grant of summary judgment, we determine whether issues of material fact exist and whether the district court erred in applying the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn. 1992). We view facts in the light most favorable to the nonprevailing party; doubts and factual inferences are also resolved in that party's favor. *Id.*

1. *Qualified Privilege.* A defamatory statement is one communicated by a defendant to someone other than the plaintiff that is false and tends to harm the plaintiff's reputation. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). A defamatory statement may be protected by a qualified privilege. *Id.* at 256–57.

To be privileged, a communication must be made on a proper occasion, with a proper motive, and be based upon reasonable grounds. *Id.* Whether a proper occasion and motive exist are questions of law. *Brooks v. Doherty, Rumble & Butler*, 481 N.W.2d 120, 125 (Minn.App.1992), *pet. for rev. denied* (Minn. Apr. 29, 1992). Whether reasonable grounds exist also is a question of law unless different conclusions can be reached, thus raising a jury question. *Id.*

Elstrom claims reasonable grounds did not exist for the statements made in the Cowdery memo and Bruning response. We disagree. Reasonable grounds can exist if a person has valid reasons for believing a statement, even though the statement later proves to be false. *Wirig v. Kinney Shoe*, 461 N.W.2d 374, 380 (Minn.1990). Cowdery's statements were based on her investigation, as were Bruning's. Although some students did not find Elstrom's comments inappropriate, as Elstrom emphasizes, Cowdery considered other sources and was concerned with more than the February 13, 1991 discussion. Cowdery also was free to reach a different conclusion about the propriety of Elstrom's statements. No evidence suggests Bruning doubted the accuracy of Cowdery's memo and thus did not have reasonable grounds for his statements. The district court did not err in finding reasonable grounds existed as a matter of law.

A qualified privilege can be lost if abused. *Stuempges*, 297 N.W.2d at 257. To raise a jury question, Elstrom had to allege facts showing Cowdery and Bruning acted with ill will or for purposes of harming her. *See id.* (discussing actual malice). Elstrom, relying on the student interviews, has not done so.

2. *Public Teacher as Public Official.*[1] A high standard of proof is imposed upon public officials seeking to recover in defamation for statements made about their official conduct. *Britton v. Koep*, 470 N.W.2d 518, 520 (Minn.1991). The district

---

1. As discussed in greater detail in the text, a "public official" is a government employee whose position and duties are of such a nature that the First Amendment demands open debate. *See Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991). A "public figure," on the other hand, is a person who has invited comment by assuming special prominence in society or by thrusting himself or herself to the "forefront" of public controversies seeking to influence their outcome. *Jadwin v. Minneapolis Star & Tribune*, 367 N.W.2d 476, 483–84 (Minn.1985) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974).

court ruled that a public school teacher is a public official, and Elstrom contends this was error. A plaintiff's status is a question of law. *Id.*

■ Minnesota follows *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), in determining whether one is a public official. *Britton,* 470 N.W.2d at 521. At a minimum, "public official" includes government employees who have, or appear to have, significant government responsibility or control. *Rosenblatt,* 383 U.S. at 85, 86 S.Ct. at 676. In addition:

> Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees * * * the *New York Times* malice standards apply.

*Id.* at 86, 86 S.Ct. at 676 (footnotes omitted).

■ Courts considering the status of public school teachers have split. Several have held teachers to be public officials, relying on the importance of education and the critical role teachers play in the lives of the children entrusted to their care. *E.g., Kelley v. Bonney,* 221 Conn. 549, 606 A.2d 693, 710 (1992); *Johnston v. Corinthian Tele. Corp.,* 583 P.2d 1101, 1103 (Okla.1978); *see also Johnson v. Robbinsdale Indep. Sch. Dist. No. 281,* 827 F.Supp. 1439, 1443 (D.Minn.1993) (concluding Minnesota would find public school principal to be public official). *But see, e.g., Richmond Newspapers, Inc. v. Lipscomb,* 234 Va. 277, 362 S.E.2d 32, 37 (1987), *cert. denied,* 486 U.S. 1023, 108 S.Ct. 1997, 100 L.Ed.2d 228 (1988) (teacher is not public official).

We conclude that a public school teacher is a public official. We note that Minnesota strongly emphasizes education. *Johnson,* 827 F.Supp. at 1443. Also, teachers act with the authority of the government. *See Britton,* 470 N.W.2d at 523 (noting "most relevant inquiry" is whether employee can assert governmental authority in performing duties). Teachers who abuse their positions may affect many lives. *Kelley,* 606 A.2d at 710; *cf. Britton,* 470 N.W.2d at 523 (finding

probation officers are public officials because of impact on others' lives). The supreme court has stated that "our society gives teachers great authority and holds them in a position of special trust." *State v. Ford,* 397 N.W.2d 875, 879 (Minn.1986). Given this authority, the public has a greater than normal interest in being able to debate and criticize freely the conduct of public school teachers.

■ To recover, a public official must show actual malice: knowledge a statement was false when made or made with reckless disregard for the truth. *Britton,* 470 N.W.2d at 520. "Reckless disregard" means the publisher had to entertain "serious doubts" about the publication's truth. *Connelly v. Northwest Publications,* 448 N.W.2d 901, 903 (Minn.App.1989), *pet. for rev. denied* (Minn. Feb. 21, 1990). Errors in judgment do not establish actual malice; nor does failure to investigate. *Standke v. B.E. Darby & Sons,* 291 Minn. 468, 477, 193 N.W.2d 139, 145 (1971), *cert. dismissed,* 406 U.S. 902, 92 S.Ct. 1608, 31 L.Ed.2d 813 (1972); *Connelly,* 448 N.W.2d at 904. A plaintiff must prove actual malice with convincing clarity. *Connelly,* 448 N.W.2d at 903. Whether the evidence can support a jury finding of actual malice is a question of law. *Diesen v. Hessburg,* 455 N.W.2d 446, 464 (Minn.1990), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991).

■ Elstrom argues Cowdery's memo, which served as the basis for the Bruning response and Bauman letter, falsely reported her investigation. Viewed in the light most favorable to Elstrom, the evidence does not show Cowdery knew her statements were false or that she entertained serious doubts about their truthfulness. It also does not show that either Bruning or Bauman questioned the veracity of their statements. The only statement for which actual malice could be shown is the one claiming that Elstrom expressed regret for unintended results of the incident, which Elstrom denies. Taking Elstrom's statement as true, we assume Bauman knew or should have known Elstrom did not do so. Elstrom is not defamed by such a claim, however, because it

does not tend to harm her reputation. We affirm the district court.

 3. *Infliction of Emotional Distress Claims.* The district court dismissed Elstrom's intentional infliction of emotional distress claim because she failed to show severe emotional distress, one of the four elements of such a claim. *See Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438–39 (Minn. 1983). We agree that Elstrom's distress was not sufficiently severe. The standard is high. If a reasonable person could be expected to endure the distress, the law does not intervene. *Id.* at 439.

Elstrom suffered insomnia, crying spells, a fear of answering her door and telephone, and depression, which caused her to seek treatment. This does not state a valid claim. *See, e.g., Eklund v. Vincent Brass & Aluminum*, 351 N.W.2d 371, 379 (Minn.App.1984) (affirming summary judgment although plaintiff consulted physician, suffered humiliation, embarrassment, lost sleep, unsteady nerves, and depression), *pet. for rev. denied* (Minn. Nov. 1, 1984).

In regard to the negligent infliction of emotional distress claim, the parties dispute whether an exception to the "zone of danger" rule exists for defamation emotional distress damages. *See Stadler v. Cross*, 295 N.W.2d 552, 553 (Minn.1980) (discussing typical negligent infliction of emotional distress cause of action). We do not reach this issue because, even under the exception, Elstrom's negligent infliction of emotional distress action fails along with the defamation claim. *See Bohdan v. Alltool Mfg.*, 411 N.W.2d 902, 907 (Minn.App.1987) (negligent infliction of emotional distress claim dependent upon defamation claim cannot stand alone), *pet. for rev. denied* (Minn. Nov. 13, 1987).

## DECISION

The district court did not err in ruling that Elstrom was a public official, that she did not show actual malice, that a qualified privilege applied to the Cowdery memo and Bruning response, or in dismissing Elstrom's emotional distress claims.

**Affirmed.**