Sandra RUDEBECK, f/k/a Sandra Liddy, Plaintiff,

v.

Raymond PAULSON, defendant and third-party plaintiff, Appellant,

v.

Ford Motor Company, a Delaware corporation, third-party defendant, Respondent.

No. C1–99–1574.

Court of Appeals of Minnesota.

June 27, 2000.

Michael R. Quinlivan, Bethan M. Davies, Cronan Pearson Quinlivan P.A., Minneapolis, MN; and Katherine L. Mackinnon, St. Louis Park, MN (for appellant).

W. Perry Brandt, Jocelyn A. Villanueva, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, L.L.P., Kansas City, MO; and Kathryn Hipp Carlson, Miller & Hipp, P.L.L.P., Minneapolis, MN (for respondent).

Considered and decided by SHUMAKER, Presiding Judge, HUSPENI, Judge,* and PORITSKY, Judge.**

## OPINION

SHUMAKER, Judge.

Appellant Raymond Paulson challenges the district court's grant of summary judgment to respondent Ford Motor Company, contending genuine issues of material fact existed as to whether alleged defamatory statements were privileged and made with malice. He also challenges the denial of his request for indemnification from Ford for his attorney fees. We affirm as to summary judgment on the defamation claim but reverse the indemnification decision and remand.

## FACTS

Respondent Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan. Ford operates a St. Paul plant at which Sandra Rudebeck and Raymond Paulson worked. In 1994, Paulson became the plant's final area manager, one of the top-salaried positions. Rudebeck became a salaried supervisor in 1995.

In February 1996, another Ford supervisor asserted various claims against Ford including allegations of sexual harassment by Paulson. Gail Shirey, a personnel relations associate from Ford headquarters, conducted an investigation into the allegations against Paulson. She interviewed primarily female salaried employees, including Rudebeck. Shirey issued a report determining that Paulson's behavior

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

constituted sexual harassment. She recommended that he be demoted and transferred to another Ford facility. Ford acted on her recommendation.

In 1997, Rudebeck sued Paulson, Ford, and another supervisor, alleging sexual harassment and related claims and defamation. Ford began discussing settlement with Rudebeck and informed Paulson. Paulson then brought claims against Ford and Rudebeck for defamation and related claims and sought indemnification from Ford.

Rudebeck settled with Ford and the other supervisor, and the district court granted summary judgment in favor of Ford on Paulson's defamation claim. After dismissal and summary judgment of other counts, the issues that remained were: (1) Rudebeck's claims against Paulson for sexual harassment and related claims and defamation; and (2) Paulson's claim against Ford for indemnification. The jury found Paulson did not defame Rudebeck, and the district court ruled for Paulson on Rudebeck's sexual harassment claims. The court denied Paulson's request that Ford be ordered to indemnify him for his attorney fees.

The district court denied Paulson's motion for amended findings on the indemnification claim and motion for amended judgment reinstating the defamation claim against Ford. Paulson then filed a notice of appeal.

## ISSUES

I. Are the allegedly defamatory statements protected by a qualified privilege, absent a showing of malice, because they were made on reasonable or probable grounds in the course of an investigation into alleged misconduct by an employee?

II. Is the employee, who prevailed in the sexual harassment lawsuit another employee brought against him, entitled to indemnification from his employer under Delaware law?

## ANALYSIS

### Standard of Review

■ When reviewing a summary judgment, an appellate court will determine whether there are any genuine issues of material fact and whether the district court erred in its application of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). When reviewing a purely legal issue, a reviewing court is not bound by and need not defer to the district court's decision. *Frost–Benco Elec. Assn. v. Minnesota Pub. Utils. Commn.*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

■ For a statement to meet the legal standards for defamation,

> it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community.

*Stuempges v. Parke, Davis Co.*, 297 N.W.2d 252, 255 (Minn.1980) (citations omitted). Even publishing a defamatory statement will not lead to liability if the statement is conditionally privileged and the privilege is not abused. *Lewis v. Equitable Life Assurance Socy.*, 389 N.W.2d 876, 889 (Minn.1986). For a communication to be privileged, "it must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Stuempges*, 297 N.W.2d at 256–57 (citation omitted). Statements made "in the course of investigating or punishing employee misconduct" are generally privileged, based on the employer's interest in protecting against harmful employees. *McBride v. Sears, Roebuck Co.*, 306 Minn. 93, 97, 235 N.W.2d 371, 374 (1975). Once it has been shown that a conditional privilege applies, the plaintiff must prove actual malice to recover. *Stuempges*, 297 N.W.2d at 257.

■ The district court determined as a matter of law that the alleged defamatory statements about Paulson made by Ford

employees were privileged and that there was no evidence of malice. Paulson contends there was a factual question for the jury as to whether the Ford employees had reasonable or probable cause to make the statements and whether the statements were made with malice.

"Reasonable grounds can exist if a person has valid reasons for believing a statement, even though the statement later proves to be false." *Elstrom v. Independent Sch. Dist. No. 270*, 533 N.W.2d 51, 55 (Minn.App.1995), *review denied* (Minn. July 27, 1995). In determining whether the statements were supported by reasonable or probable cause, courts will examine whether the employer took investigative steps. *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn.1990). We do not interpret this to mean that a mere assertion that the employer conducted an investigation will suffice; instead, the court will examine the precise nature and extent of the investigation to assess the facts supporting the defamatory allegations and the efforts the employer made to ascertain their accuracy.

Paulson contends the statements and reports about him were so biased and unsubstantiated that they do not show Ford had reasonable or probable cause for making the statements. We disagree. Unlike cases in which an employer makes allegations without investigation or identifying the source of complaints, Ford here conducted a thorough investigation, prompted by a complaint by another employee. Ford interviewed and took statements from a number of witnesses, reviewed Paulson's history of similar complaints, and talked to Paulson himself. The investigation provided reasonable or probable grounds to support the statements concerning Paulson, which are therefore protected by a qualified privilege.

Once a qualified privilege applies, the plaintiff must prove actual malice to recover. *Stuempges*, 297 N.W.2d at

257. Malice is "actual ill will, or a design causelessly and wantonly to injure plaintiff." *McBride*, 306 Minn. at 98, 235 N.W.2d at 375. While the issue of whether actual malice is present is usually a jury question, in some circumstances, it may be subject to summary judgment. *Wallin v. Minnesota Dep't of Corrections*, 598 N.W.2d 393, 402 (Minn.App.1999), *review denied* (Minn. Oct. 21, 1999).

Paulson contends there was sufficient evidence of malice on the part of those making the statements to allow the issue to go to the jury. He asserts that several of the individuals who made statements had a clear vendetta against him, and that the reports used exaggerated language and false representations. But Paulson himself admitted at his deposition that Shirey and Ford were just doing their job during the investigations and no personal grudges or vendettas were involved. He acknowledged there was no evidence that Shirey handled the investigation in such a way as to intentionally harm him. We agree with the district court that Paulson did not provide evidence showing there was a factual issue as to whether actual malice was present.

## II.

Next, Paulson contends that the district court erred as a matter of law in holding that he was not entitled to indemnification from Ford under Delaware law. The district court ruled Ford need not indemnify Paulson under Delaware law because Rudebeck's claim against him was not "by reason of the fact" that he was an employee, but based on his actions as an individual.

Before reaching the merits, we must dispose of several preliminary issues. Ford challenges this court's jurisdiction to address the indemnification issue because Delaware law now provides that its court of chancery has exclusive jurisdiction over indemnification claims. Del.Code Ann. tit. 8, § 145(k) (Supp.1998); *see Jinadu v.*

*CenTrust Mortgage Corp.*, 517 N.W.2d 84, 86 (Minn.App.1994) (holding party may raise jurisdictional issue at any stage of proceedings), *review denied* (Minn. July 27, 1994). But a state legislature cannot create a transitory cause of action and confine its enforcement to its own courts. *State ex rel. Bossung v. District Court*, 140 Minn. 494, 498, 168 N.W. 589, 591 (1918). To determine whether a claim is local or transitory, courts will examine the nature of the claim. *Wilson v. Celestial Greetings, Inc.*, 896 S.W.2d 759, 760–61 (Mo.Ct. App.1995) (holding that Delaware statute providing dissenting stockholder in Delaware corporation with right of appraisal, which is essentially a contract claim with terms supplied by Delaware law, was local action enforceable only in the Delaware Court of Chancery). The types of cases which are transitory and which may not be confined to a particular state's courts usually involve personal injury or wrongful death, which are by their nature transitory. *Id.* at 761. Similarly, the indemnification claim, which will require an examination of the underlying case, is in the nature of a transitory action, which may be decided in Minnesota courts.

The next preliminary issue requires us to address which version of the Delaware statute applies. The Delaware legislature amended section 145(c) in 1997 to remove the right of employees or agents of the corporation to obtain mandatory indemnification. 71 Del. Laws ch. 120, § 5 (1997). But the revisor's note explicitly provides that the section "shall become effective with respect to indemnification of expenses (including attorneys' fees) for acts or omissions occurring on or after July 1, 1997." *Id.*, § 32. Because the acts or omissions here occurred before this date, the earlier version applies.

■ Finally, we address the merits of appellant's claim for indemnification. Section 145(c) provides mandatory indemnification for any person who is a party to a lawsuit "by reason of the fact that he is or was a director, officer, employee, or agent of the corporation," to the extent the person succeeds on the merits or in defense of any action. Del.Code Ann. tit. 8, § 145(a) (1991). This is a "mandatory provision that applies to all Delaware corporations and grants an absolute right of indemnification in such situations." *Witco Corp. v. Beekhuis*, 38 F.3d 682, 691 (3d Cir.1994); *see also Merritt–Chapman Scott Corp. v. Wolfson*, 321 A.2d 138, 141 (Del.Super.Ct.1974). It has been broadly interpreted. *Witco*, 38 F.3d at 691.

■ The issue here is whether appellant was sued "by reason of the fact" that he was an employee of Ford. This section applies where one eligible for indemnification under the statute "successfully defends against claims of personal liability that arise from or have a nexus to his corporate position." *Id.* at 692. Paulson asserts that absent the employment relationship, Rudebeck would have had no cause of action, and he was made a party to the proceeding by reason of the fact that he was a Ford employee. Ford disagrees, contending the claims under the Minnesota Human Rights Act for aiding and abetting and reprisal do not require an employment relationship, and instead apply to "any person." Minn.Stat. § 363.03, subds. 6, 7 (1998). Further, Ford argues that Rudebeck's claims against Paulson do not arise from or have a sufficient nexus to his duties as area manager. Instead, her claims were based on sexual harassment, and Ford has a zero-tolerance policy against sexual harassment.

In a very recent California case, this question was addressed. *Jacobus v. Krambo Corp.*, 78 Cal.App.4th 1096, 93 Cal.Rptr.2d 425 (Cal.Ct.App.2000). There, the employee sued the employer for indemnification of legal costs he incurred in successfully defending against a sexual harassment suit brought by a co-worker. The court noted that "social interactions among employees * * * are broadly incidental to the enterprise of an employer." *Id.* at 1103, 93 Cal.Rptr.2d 425.

These expressions of human nature are incidents inseparable from working together. They involve risks of injury, and these risks are inherent in the working environment.

*Id.* at 1103–04, 93 Cal.Rptr.2d 425 (citation omitted). In an office where "sexual joking and profanity were commonplace" and the facts suggested the employee developed her sexual harassment claim to gain an advantage in employment, the court held that:

> In our view, the risk that one worker may accuse another of sexual harassment to deflect an adverse performance review is a risk inherent in employment * * *. If the employer chooses not to defend the accused employee in the lawsuit, then the employer must pay the defense costs of the exonerated employee.

*Id.* at 1104, 93 Cal.Rptr.2d 425.

In this case, the district court determined that, based on Rudebeck's pattern of continued voluntary association with Paulson, her claim of harassment was not credible. Based on the reasoning in *Jacobus,* Paulson is entitled to indemnification from Ford for successfully defending against Rudebeck's lawsuit.

### DECISION

The decision of the district court granting summary judgment on the defamation claim is affirmed. The decision regarding indemnification is reversed.

**Affirmed in part, reversed in part, and remanded.**