*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1342
A14-1343**

Michael Harlow,
Respondent,

vs.

State of Minnesota Department of Human Services, et al.,
Appellants.

**Filed December 27, 2016
Affirmed
Kirk, Judge**

Ramsey County District Court
File No. 62-CV-13-1493

Gregg M. Corwin, Grant S. Gibeau, Gregg M. Corwin & Associate Law Office, P.C., St. Louis Park, Minnesota (for respondent)

Lori Swanson, Attorney General, Alethea M. Huyser, Michael Goodwin, Anthony R. Noss, Assistant Attorneys General, St. Paul, Minnesota (for appellants)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

# U N P U B L I S H E D   O P I N I O N

**KIRK**, Judge

On remand from the Minnesota Supreme Court, we are tasked with determining whether the district court erred by denying summary judgment on the ground of qualified immunity with respect to respondent Michael Harlow's claims against appellant David

Proffitt. Because we agree with the district court that there are genuine issues of material fact regarding qualified immunity, we affirm.

## FACTS

These consolidated appeals arise out of the district court's denial of a motion for summary judgment to dismiss respondent Dr. Michael Harlow's claims against appellants Minnesota Department of Human Services (DHS), deputy DHS commissioner Ann Barry, and Minnesota Security Hospital (MSH) administrator David Proffitt. Harlow was employed as a psychiatrist at MSH until December 20, 2011, when his employment was terminated based on his orders for treatment of an uncooperative patient at MSH on November 15, 2011. Both Barry and Proffitt made statements to the press about the reasons for Harlow's discharge, and Proffitt made additional statements in an e-mail to DHS employees. Harlow sued, asserting claims of defamation and violations of the Minnesota Government Data Practices Act (MGDPA).

Appellants moved for summary judgment on the grounds (as relevant here) that the data disclosed was public under the MGDPA and that their statements were absolutely or qualifiedly privileged. The district court denied the motion. Appellants filed a notice of appeal with respect to the denial of summary judgment on the grounds of privilege and a petition for discretionary review (PDR) with respect to the denial of summary judgment on the MGDPA claims. This court granted the PDR and consolidated the two appeals.

On April 27, 2015, this court issued an opinion reversing the district court's denial of summary judgment. *Harlow v. State Dep't of Human Servs.*, 862 N.W.2d 704, 714 (Minn. App. 2015), *aff'd in part, rev'd in part, and remanded*, 883 N.W.2d 561 (Minn.

2

2016). This court held that Harlow's MGDPA claims failed as a matter of law and that both Barry's and Proffitt's statements were protected by the absolute privilege for executive-branch officials. *Id.* at 714-16. The court declined to reach the issue of qualified privilege. *Id.* at 716 n.5. Harlow sought, and the supreme court granted, further review.

On August 10, 2016, the supreme court issued an opinion affirming the dismissal of the MGDPA claims and the dismissal of the defamation claim against Barry on grounds of absolute privilege, but reversing the dismissal of the defamation claim against Proffitt on the ground of absolute privilege, and remanding to this court for consideration of whether Proffitt's statements were protected by qualified privilege. *Harlow v. State, Dep't of Human Servs.*, 883 N.W.2d 561 (Minn. 2016).

## D E C I S I O N

This court reviews the denial of summary judgment de novo to determine whether there are any genuine issues of material fact and whether summary judgment is appropriate as a matter of law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). "One who makes a defamatory statement will not be held liable if the statement is published under circumstances that make it qualifiedly privileged and if the privilege is not abused." *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997). Like absolute privilege, qualified privilege is "'based upon a policy that treats the ends to be gained by permitting defamatory statements as outweighing the harm that may be done to the reputation of others.'" *Zutz v. Nelson*, 788 N.W.2d 58, 61-62 (Minn. 2010) (quoting Restatement (Second) of Torts ch. 25, topic 2, tit. B Introductory Note, at 242-43 (1977)).

3

For a defamatory statement to be protected by a qualified privilege, the statement must be made in good faith and "'must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause.'" *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256-57 (Minn. 1980) (quoting *Hebner v. Great N. Ry.*, 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)). Absent fact issues, whether a statement is protected by qualified privilege is an issue of law for the court to decide. *See Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 n.4 (Minn. 1990); *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 889 (Minn. 1986).

If a statement is protected by qualified privilege, recovery may be had only upon a showing of actual malice, which is "actual ill will, or a design causelessly and wantonly to injure plaintiff." *McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 98, 235 N.W.2d 371, 375 (1975); *see also Lewis*, 389 N.W.2d at 890 ("A qualified privilege is abused and therefore lost if the plaintiff demonstrates that the defendant acted with actual malice."). The plaintiff—in this case Harlow—has the burden to show abuse of the privilege. *Lewis*, 389 N.W.2d at 890. "While the issue of whether actual malice is present is usually a jury question, in some circumstances, it may be subject to summary judgment." *Rudebeck v. Paulson*, 612 N.W.2d 450, 454 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000).

The statements remaining at issue following the supreme court's decision are Proffitt's statements to the media and to DHS employees regarding the reasons for Harlow's termination. With respect to statements to the press, Harlow's defamation claim is based on the following excerpt from a February 28, 2012 Minnesota Public Radio (MPR) article:

Proffitt said the decision to fire Harlow had nothing to do with restraints or seclusion. Staff could have done more to prevent the situation from becoming violent, he said, but once things got out of control, they had no choice but to restrain the patient. However, he said staff should have returned the patient's clothes more quickly.

"He was maintained in a dehumanizing condition for hours without clothing, without [a] blanket, without a mattress, without a pillow, even though it was documented he was trying to sleep on the slab and was calm and quiet," Proffitt said. "Those are things that are not common for this facility. They're not acceptable for this facility."

Proffitt also told MPR News that although he made the final decision to fire Harlow, he acted on the recommendation of a four-person workplace incident review committee.

Dr. John Wermager, who served on the committee and was the facility's director of psychiatry at the time, said that is inaccurate. He said that the committee did meet, but did not make any recommendations.

With respect to statements to DHS employees, Harlow's defamation claim is based on the following statements from a February 29, 2012 e-mail from Proffitt to DHS employees:

A recent newspaper article refers to the separation of employment with Dr. Harlow, and his claims that he was treated unfairly, and that he ". . . followed standard operating procedure from the beginning to the end of the incident[.]"

A violation of an individual's rights[:] i.e., maintaining a vulnerable person in a denuded state for multiple hours without adequate justification required the separation of employment.

### Proper Occasion

Although not addressed by the district court, it appears that Proffitt acted on a proper occasion in making statements to the press and other MSH employees about Harlow's discharge, which had already become a matter of public interest. *See Palmisano v. Allina*

5

*Health Sys., Inc.*, 190 F.3d 881, 885 (8th Cir. 1999) (applying Minnesota law to hold that qualified privilege applied to statements to media about employee discharged for Medicare/Medicaid billing improprieties, an issue of "obvious public interest"); *Wirig*, 461 N.W.2d at 379-80 (recognizing that statements to employees about the reasons for another employee's discharge are made upon a proper occasion).

Harlow asserts that there is a genuine issue of material fact with regard to whether Proffitt's statements were made on a proper occasion because it is unclear from the record whether speaking to the press or sending the e-mail were part of Proffitt's job duties. But there is no dispute that Proffitt was speaking on behalf of MSH, and Harlow cites to no authority requiring that statements be made pursuant to a specific job duty. *Cf.* Restatement (Second) of Torts § 598A (recognizing conditional privilege for statements by inferior state officer that are "required *or permitted* in the performance of his official duties" (emphasis added)). Harlow also asserts that the breadth of the audience to Proffitt's e-mail demonstrates that his statements were not made on a proper occasion. These arguments regarding the scope of the audience go to whether the privilege was abused, and are addressed further below. *See Buchanan v. Minnesota State Dep't of Health*, 573 N.W.2d 733, 738 (Minn. App. 1998) (identifying circumstances evidencing malice).

***Proper Motive***

The district court concluded that there was a genuine issue of material fact regarding Proffitt's motives. Specifically, the district court cited Harlow's evidence that conditions at MSH created a possible inference that Proffitt and Barry "us[ed] Dr. Harlow as a scapegoat." Proffitt asserts that Harlow offers no more than speculation to support his

6

assertions of bad motive, citing *Buchanan*, 573 N.W.2d at 737, and *Palmisano*, 190 F.3d at 886. We disagree.

Motive is a question of intent, which, "[b]ecause direct evidence of intent is rarely available . . . generally must be proved 'by drawing inferences from the defendant's words and actions in light of the totality of the circumstances.'" *State v. Ferrier*, 792 N.W.2d 98, 101 (Minn. App. 2010) (quoting *State v. Cooper*, 561 N.W.2d 175, 179 (Minn.1997)). We conclude that a reasonable factfinder could, under the totality of the circumstances here, find that Proffitt acted without a proper motive.

The February 2012 MPR article stated that conditions at MSH "have worsened," that employees face "confusing policies and a lack of adequate training," and that Proffitt was under investigation for creating a hostile work environment. These facts raise a question regarding whether Proffitt had a motive to blame Harlow for issues at MSH or at least to deflect blame from himself. Likewise, the article stated that, following the November 2011 patient incident, "many facilities around the country would have conducted an extensive debriefing of all staff members involved, in keeping with best practices." Because Proffitt is identified as the hospital's administrator, a reasonable factfinder could find that he had a motive to redirect attention from MSH's failure to conduct a more thorough investigation.

As Harlow points out, the record is clear that Proffitt sent his e-mail to DHS staff the day after the MPR article. Proffitt's e-mail addressed clarifications in MSH policies and stated that Harlow was fired for violating a patient's rights. We agree with Harlow's argument that, "[t]he negative light in which Proffitt was cast in the [MPR] article

combined with the immediacy of the email response and the self-serving nature of the statements within it" create a genuine issue of material fact regarding Proffitt's motive.

*Reasonable Cause*

The district court did not address whether Proffitt had reasonable cause for his statements to the media. When determining whether statements were made upon reasonable cause, we "examine the precise nature and extent of the [speaker's] investigation to assess the facts supporting the defamatory allegations and the efforts the [speaker] made to ascertain their accuracy." *Rudebeck*, 612 N.W.2d at 454. We can determine that reasonable cause exists "if a person has valid reasons for believing a statement, even though the statement later proves to be false." *Id.* (quotation omitted).

Harlow asserts that reasonable cause is lacking because Proffitt and Barry gave contradictory reasons for Harlow's discharge. Proffitt argues that, viewed contextually, Proffitt's statement does not contradict Barry's but rather clarifies that the discharge was not based solely on the use of restraints. In *Rudebeck*, this court found reasonable cause when the speaker "conducted a thorough investigation" and interviewed multiple witnesses, including the subject of the statements. *Id.* Here, Proffitt did not conduct the employment or licensing investigations, but we nonetheless conclude that Proffitt may have had valid reasons for believing his statements as far as they referred to the completed investigations. *See id.* (describing a case without reasonable cause as one in which the speaker makes allegations without an appropriate investigation). The employment and licensing investigations here did not detail the reasons for Harlow's discharge. Because Proffitt and Barry then provided contradictory reasons to a reporter, there is a fact question

of whether Proffitt should have conducted a more thorough investigation before speaking to a reporter, and, accordingly, a fact question regarding reasonable or probable cause.

*Malice*

The district court finally concluded that genuine issues of material fact exist with respect to whether Proffitt made the challenged statements with malice. As is noted above, a statement is made with actual malice that defeats a qualified privilege if made "from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Stuempges*, 297 N.W.2d at 257 (quotation omitted). "'Malice may be proved by extrinsic evidence of personal ill feeling, or by intrinsic evidence such as the exaggerated language of the libel, the character of the language used, the mode and extent of publication, and other matters in excess of the privilege.'" *Buchanan*, 573 N.W.2d at 738 (quoting *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144-45 (Minn. 1986) (quotation omitted)). "Malice is not proved merely by the fact that the statement has been made or by the fact that the statement is later proven to be false." *Bahr v. Boise Cascade Corp*., 766 N.W.2d 910, 920 (Minn. 2009).

We agree with the district court that Harlow has identified evidence sufficient to create a fact issue with respect to malice. A reasonable factfinder could find that the language used by Proffitt to describe the events precipitating Harlow's discharge was exaggerated and an abuse of the privilege. A reasonable factfinder might also find that the size of the audience to Proffitt's e-mail was in excess of the privilege and thus constituted an abuse. *See Buchanan*, 573 N.W.2d at 738 (identifying circumstances tending to show malice); *see also Minke v. City of Minneapolis*, 845 N.W.2d 179, 182 (Minn. 2014)

(explaining that absolute and qualified privilege protect statements that society wants to encourage despite the risk that they might be defamatory).

**Affirmed.**